**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| MICHAEL VOGT, | ) | |
| on behalf of himself and all others | ) | |
| similarly situated | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-04170-NKL |
| | ) | |
| STATE FARM LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Defendant. | ) | |

**ORDER**

Defendant State Farm Life Insurance Company moves to dismiss Plaintiff Michael Vogt's Complaint. [Doc. 12]. Plaintiff Michael Vogt moves for leave to amend his Complaint. [Doc. 31]. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part; Plaintiff's motion for leave to amend is denied.

**I. Background[1]**

Plaintiff Michael Vogt filed this class action for claims arising out of his life insurance policy with Defendant State Farm Life Insurance Company. On October 6, 1999, Vogt purchased a State Farm flexible premium adjustable whole life insurance policy with an initial basic amount of $100,000. [Doc. 1, p. 3]. Unlike standard term life insurance policies, this type of policy provides an investment, savings, or interest-bearing component in addition to the usual death benefit. [Doc. 1, p. 3]. Under this policy, State Farm maintains an interest-bearing account in trust for the insured, and this account's value, which is owned by the insured, grows

---

[1] At the motion to dismiss stage, all of Plaintiff's allegations are accepted as true and construed in the light most favorable to the Plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

over time.  [Doc. 1, p. 4].  The policy authorizes State Farm to take a monthly deduction from this account, defined as:

> **Monthly Deduction.**  This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction.  Each deduction includes:
> (1) the *cost of insurance*,[2]
> (2) the monthly charges for any riders, and
> (3) the monthly expense charge.

[Doc. 1-1, p. 10 (Vogt Policy) (emphasis added)].  The policy states the monthly expense charge is $5.00.  [Docs. 1, p. 5 and 1-1, p. 4 (Vogt Policy)].  The policy also defines how the cost of insurance charge ("COI charge") is to be calculated:

> **Cost of Insurance.**  This cost is calculated each month.  The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount.
>
> The cost of insurance is the **monthly cost of insurance rate** times the difference between (1) and (2), where:
> (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted. . . .

[Doc. 1-1, p. 11 (Vogt Policy) (emphasis added)].  The policy goes on to disclose the factors State Farm may use to determine the "monthly cost of insurance rate," which is used to calculate the COI charge that is deducted from Vogt's account each month:

> **Monthly Cost of Insurance Rates.**  These rates for each policy year are based on the Insured's *age on the policy anniversary, sex, and applicable rate class*.  A rate class will be determined for the Initial Basic Amount and for each increase.  The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount.  Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount.  We can charge rates lower than those shown.  *Such rates can be adjusted for projected changes in mortality* but cannot exceed the maximum monthly cost of insurance rates.  Such adjustments cannot be made more than once a calendar year.

---

[2] The way that State Farm calculates the cost of insurance charge is what is disputed in this lawsuit.

[Doc. 1, p. 6 (emphasis added)].

State Farm calculates the Monthly Cost of Insurance Rates by looking to factors including but not limited to: expense experience, persistency, taxes, profit assumptions, investment earnings, and capital and reserve requirements. [Doc. 1, p. 7]. By using these additional factors in its rate calculation, State Farm charges Monthly Cost of Insurance Rates that are higher than if State Farm relied only on the factors listed in the above provision: the insured's age, sex, applicable rate class, and projected changes in mortality. [Doc. 1, p. 7].

Vogt alleges that State Farm was aware of its non-disclosure because of its superior knowledge of its insurance calculations. [Doc. 1, p. 8]. Vogt did not discover that State Farm was improperly calculating these charges until approximately May 2016 when he engaged counsel and consulted an actuarial expert. [Doc. 1, p. 8-9]. Prior to this date, Vogt had no knowledge of State Farm's practice regarding these charges, and he was unable to discover this practice without the help of an expert. [Doc. 1, p. 8-9]. Vogt further alleges that State Farm does not disclose to Vogt or other policyholders the Monthly Cost of Insurance Rates that are used to calculate the monthly Cost of Insurance Charges, nor does State Farm disclose the components or factors comprising those rates. [Doc. 1, p. 8].

Vogt brings claims for (I) breach of contract based on State Farm's Cost of Insurance Charge, (II) breach of contract based on State Farm's Expense Charge, (III) conversion, and (IV) declaratory relief. Vogt seeks to represent a class of insureds who own or owned a State Farm life insurance policy that provided for: (1) a COI charge or deduction using a rate based on the insured's age, sex, and applicable premium or rate class, and which can be adjusted for projected changes in mortality; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest-bearing, or savings component; and (4) a death benefit. [Doc. 1, p. 9].

3

## II.      Discussion

State Farm argues that Vogt's Complaint should be dismissed in its entirety because all of his claims are barred by the applicable five-year statute of limitations.   In the alternative, State Farm contends that Vogt's Count III conversion claim should be dismissed for two independent reasons: (1) conversion claims do not lie for recovery of money, and (2) the claim is barred by Missouri's economic loss doctrine.   As to Vogt's Count IV declaratory judgment claim, State Farm contends dismissal is additionally required because this claim serves no useful purpose and is duplicative of his breach of contract claims.   Finally, Vogt moves for leave to amend his Complaint to add a claim under the Missouri Merchandising Practices Act, which State Farm opposes.

At the pleading stage, a plaintiff is not required to present detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).


### A.  Statute of Limitations

State Farm contends that Vogt's claims are barred by Missouri's five-year statute of limitations because his cause of action accrued in 1999 when the first charge was levied on his account under the policy, but he did not file this lawsuit until 2016.   Vogt, however, argues that the statute of limitations did not begin to run until May 2016, when Vogt obtained counsel and actuarial experts who ascertained his damages.

Under Missouri law, a five-year statute of limitations applies to claims for breach of contract, conversion, and requests for declaratory judgment, and the statute begins to run at the

4

time when the action accrues. Mo. Rev. Stat. §§ 516.120(1), (2), and (4). Missouri law further provides:

> The cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Mo. Rev. Stat. § 516.100. As such, "the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action." *Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57 (Mo. banc. 1985) (citing *Anderson v. Griffin, Taylor, Penner & Lay, P.C.*, 684 S.W.2d 858 (Mo. App. 1984)). Therefore, whether Vogt's claims are barred by the statute of limitations depends upon when his damages were "capable of ascertainment." Missouri courts have applied a "consistent approach" to interpreting this provision, finding that "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *Powel v. Chaminade Coll. Prep., Inc.*, 197 S.W.3d 576, 582 (Mo. 2006). Accordingly, the Court must apply an objective, rather than a subjective standard to determine when Vogt was on sufficient notice that State Farm was overcharging him. *See id.*

State Farm argues that Vogt's damages were capable of ascertainment in 1999 when he first incurred a COI charge under his policy. State Farm contends that a reasonable person could have discovered these damages back in 1999 because Vogt knew the amount of the COI charges being levied against his account, and he knew the terms of his policy. In response, Vogt contends that he has alleged sufficient facts showing there was no evidence that would have placed a reasonably prudent person in his position on notice that his charges exceeded what was permitted by the policy. Although State Farm provides an annual statement to policy holders,

Case 2:16-cv-04170-NKL   Document 52   Filed 02/03/17   Page 5 of 22

which shows the amount of COI Charges that were deducted from the Account Value each month, this information was not enough to put Vogt on notice that anything was amiss. Vogt contends that he and other policy holders had no way of knowing that the COI Charges listed in their statements were calculated using impermissible factors not disclosed in their policies. Because only State Farm possessed the actuarial information and equations underlying its rate and charges computations, Vogt lacked the tools necessary to determine the proper COI Rates. Even if State Farm had disclosed its rates or the factors comprising its rates, Vogt also contends that he was not required to "double check" State Farm's experts' calculations in an attempt to discover possible claims. Instead, Vogt contends his damages were not capable of ascertainment without the help of an actuarial expert, which he hired in 2016.

Vogt relies on *Martin v. Crowley, Wade & Milstead, Inc.*, which involved a suit filed in 1983 against defendants who negligently surveyed the plaintiffs' residential lot ten years prior in 1973. 702 S.W.2d 57 (Mo. banc 1985). The inaccurate 1973 survey had caused plaintiffs to build their home in the wrong place, diminishing its value. *Id.* The trial court found the statute of limitations began to run at the time of the negligent survey in 1973, at which point the "defect complained of was visible and ascertainable by an easy inspection of the land or by asking a neighbor." *Id.* at 58. However, the Supreme Court of Missouri reversed, stating that plaintiffs should not be required to "double check the services provided by a professional expert." *Id.* Nothing indicated that "plaintiffs knew or should have known of any reason, until May 1981, to question defendant's work." *Id.* Therefore, the Court reasoned that the statute did not begin to run until 1981 when plaintiffs learned that the house had been built too close to the property line due to a boundary dispute. *Id.* In a later decision, the Supreme Court of Missouri reaffirmed *Martin*, noting that this decision "gave the phrase 'capable of ascertainment' a practical

6

construction; until plaintiff has sufficient knowledge to be put on 'inquiry notice' of the wrong and damages, that standard is not met." *Powel*, 197 S.W.3d at 583.

Vogt's case is even stronger than that of the *Martin* plaintiffs. Unlike the surveying defect in *Martin*, the improper rate and charge calculations alleged by Vogt were not ascertainable by mere visual inspection or asking a neighbor. Instead, they were only ascertainable with knowledge of the actuarial information used in State Farm's calculations, information that Vogt did not have. Just as the *Martin* plaintiffs relied on surveying experts, Vogt similarly relied on State Farm's experts who administered his insurance policy.

As discussed above, Vogt plausibly alleges why he lacked knowledge of State Farm's improper calculations, including that Vogt did not have access to the factors State Farm used to calculate its COI Charges. In contrast to the examples cited by State Farm, the Court is without any reason to find that Vogt was on "inquiry notice" back in 1999 that State Farm's experts were improperly calculating the charges applied to his policy. *Cf., e.g., O'Reilly v. Dock*, 929 S.W.2d 297 (Mo. App. 1996) (finding statute of limitations began to run more than five years before the action was filed when plaintiffs' water damage was apparent, causing the additional damage for which they sued even though they were not aware of the extent of the damage until later); *Arst v. Max Barken Inc.*, 655 S.W.2d 845 (Mo. App. 1983) (finding statute of limitations began to run in 1969 when plaintiff saw cracks in his home's foundation but where plaintiff waited until 1979 to hire someone to figure out the cause of the cracks and only then tried to sue his contractor).[3]

---

[3] State Farm also contends that a cause of action that is difficult to ascertain but nonetheless capable of ascertainment long before the complaint was filed, is time barred. The Court is unpersuaded by this contention, however, because it contradicts the standard set forth in *Powel* that "capable of ascertainment" requires the plaintiff to have sufficient knowledge to be put on inquiry notice of the wrong and damages. *See Powel*, 197 S.W.3d at 582. Further, State Farm's cited authorities are not binding on this Court. *See, e.g., Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (applying Arkansas law rather than Missouri law) and *Drobnak v.*

State Farm attempts to distinguish *Martin* from Vogt's case by asserting that the land survey in *Martin* was performed and then left unreferenced for years while, in Vogt's case, his COI charges were levied against him on a monthly basis beginning in 1999. The Court rejects the conclusion, however, that by virtue of accruing on a monthly basis, Vogt's damages were somehow more ascertainable than a one-time land survey. Without evidence showing Vogt had sufficient knowledge to put him on inquiry notice that these charges were improperly calculated, the Court is unpersuaded that his damages were ascertainable the moment his first monthly charge was levied against his account.

State Farm also makes a passing argument that Vogt failed to allege the existence of any newly discoverable information in 2016 that would justify the statute of limitations not beginning to run until that date. However, the Court is unaware of any authority that requires a plaintiff to show newly discoverable information in order to show his claims are timely. Even if this were a requirement, Vogt has plausibly alleged that his hiring of an actuarial expert provided him newly discoverable information—that his life insurance account was being overcharged—which caused the statute of limitations to begin to run.

Construing all reasonable inferences in Vogt's favor, his Complaint lacks any indication that he knew or had reason to know in 1999 or at any time prior to May 2016 that these claims had accrued. Because Vogt did not have sufficient knowledge to be put on inquiry notice of State Farm's practice until he employed an actuarial expert in 2016, Vogt's damages were not capable of ascertainment until that date. Therefore, Vogt's cause of action did not accrue until

---

*Anderson Corporation*, 561 F.3d 778 (8th Cir. 2010) (applying Minnesota law and rejecting plaintiff's argument that the statute of limitations should be tolled on the basis of fraudulent concealment).

May 2016 when he hired this expert, and his Complaint is not barred by the five-year statute of limitations. Vogt's claims are timely.[4]

### B. Count III – Conversion

In Count III, Vogt brings a claim for conversion, which requires him to show: "(1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 114 (Mo. App. 2011). In his Complaint, Vogt alleges that State Farm deducted unauthorized amounts each month from Vogt's Account. Vogt further alleges that he placed money in his account in State Farm's possession for a specific purpose to be applied consistently with the terms of the policy and that State Farm misappropriated his money by diverting it for its own use in contravention of the policy. Although requiring expert testimony, Vogt contends that the unauthorized COI Charges that State Farm took from Vogt's account can be determined to an identified sum by comparing Vogt's actual COI Charges per month with what the COI Charges should have been. State Farm challenges Vogt's conversion claim with two independent arguments: (1) the claim is barred by Missouri's economic loss doctrine, and (2) suits seeking recovery of money, not specific chattels, cannot sound in conversion.

State Farm argues that Vogt's conversion claim must be dismissed because it is barred by Missouri's economic loss doctrine. Under Missouri law, "the economic loss doctrine bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual

---

[4] Because the Court finds that Vogt's claims are timely under Missouri law's "capable of ascertainment" standard, it need not address Vogt's alternative timeliness arguments, including under a continuing violation theory and fraudulent concealment theory.

9

duty." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (discussing Missouri law). "Where the parties have a relationship based in contract, '[a tort] claim to recover economic losses must be independent of the contract or such claim [is] precluded by the economic loss doctrine.'" *HHCS Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7324968, at *5 (quoting *Self v. Equilon Enterprises, LLC*, 2005 WL 3763533, at *11 (E.D. Mo. March 30, 2005) (reviewing Missouri case law)).

Vogt responds that his tort claim for conversion is independent of his policy contract with State Farm, and thus, the economic loss doctrine does not bar his claim. As support, Vogt argues that he has a possessory right in his money and that State Farm violated this right by taking more of his money than permitted by the policy. Vogt further contends that the common law imposes the duty not to convert another's property, which is a duty independent from State Farm's duties under the contract.

Although Vogt cites to several cases applying Iowa and Virginia law, the Court is unaware of any Missouri case recognizing an exception to the economic loss doctrine for claims like Vogt's. [*See* Doc. 22, p. 19, *citing, e.g., Cook v. John Hancock Life Ins. Co.*, 2015 WL 178108 (W.D. Va. Jan 14, 2015) (finding Virginia's economic loss doctrine did not bar plaintiff's conversion claim where "Virginia courts routinely have held that the duty not to convert others' property is a common law duty owed by all, and would exist even in the absence of a contract between the parties")]. Furthermore, even if Vogt's theory could apply under different facts, the facts before this Court indicate that Vogt and State Farm have a relationship based in contract, and Vogt's conversion claim is dependent on his breach of contract claims. Specifically, for his conversion claim, Vogt alleges that State Farm violated his possessory rights in his money, which he entrusted to State Farm. This claim will rise or fall based on the Court's

interpretation of the policy contract. Ultimately, whether State Farm converted funds from Vogt's account or rightfully deducted them depends on whether State Farm breached its contract under the policy by using unlisted factors in its rate and charge calculations. Therefore, Vogt's conversion claim arises from State Farm's alleged breaches of the parties' policy contract. For the previous reasons, Vogt's tort claim for conversion is not independent from his contract claims, and therefore, it is barred by the economic loss doctrine.[5] The Court grants State Farm's motion to dismiss Count III.

### C. Count IV – Declaratory Relief

In Count IV, Vogt requests a declaration that State Farm's use of undisclosed factors to compute the Monthly Cost of Insurance Rates and its resulting withdrawal of higher COI Charges from policyholders' accounts is contrary to the policy. [Doc. 1, p. 14]. Vogt also seeks a declaration that State Farm's inflation of the Monthly Cost of Insurance Rates with expense factors not disclosed and its deduction of Expense Charges greater than the fixed and maximum Expense Charges authorized also violates the policy. [Doc. 1, p. 14]. State Farm, however, contends this declaratory relief claim should be dismissed because it "serves no useful purpose" due to Vogt's virtually identical breach of contract claims.

The availability of declaratory relief is a matter of federal law, governed by the Declaratory Judgment Act. *See G.S. Robins & Co. v. Alexander Chem. Corp.*, 2011 WL 1431324, at *1 n. 1 (E.D.Mo. Apr. 14, 2011). The Declaratory Judgment Act provides that in a "case of actual controversy within its jurisdiction . . . any court of the United States . . . may

---

[5] Because the Court dismisses Count III as barred by the economic loss doctrine, it need not address State Farm's second argument that suits seeking the recovery of money cannot sound in conversion.

declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As its language suggests, the Act "granted the federal courts discretion to make a declaration of rights; it did not impose a duty to do so." *Alsager v. District Ct. of Polk Cnty., Iowa*, 518 F.2d 1160, 1163 (8th Cir.1975) (internal quotation and citation omitted). Therefore, a district court should deny declaratory relief unless (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Id.*

Declaratory relief does not serve a useful purpose where "the declaratory judgment plaintiff has another, more appropriate remedy." *Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 261 (8th Cir.1993). "It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law." *Id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)); *see also* *852 *Midwest Special Surgery, P.C. v. Anthem Ins. Companies*, 2010 WL 716105, at *6 (E.D.Mo. Feb. 24, 2010) (and cases cited therein).

In his declaratory relief count, Vogt alleges breaches of State Farm's obligations under the terms of the insurance contract and asks for a declaration that the terms have been breached. The declaratory relief count essentially duplicates Vogt's breach of contract counts in which he alleges State Farm breached the contract in the same ways. However, Vogt also seeks class certification, and the Court cannot say at this stage of the litigation whether there will be class certification or if there is, whether a declaratory judgment would serve a useful purpose. Therefore, the Court denies State Farm's motion as to Count IV, without prejudice.

12

**D. Motion for Leave to File the First Amended Complaint**

After State Farm's motion to dismiss was fully briefed but before the deadline to amend the pleadings, Vogt moved for leave to amend his class Complaint. Specifically, Vogt moved for leave to add a claim under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.101 ("MMPA"). [Doc. 31].

Rule 15(a)(2) provides that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated." *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001).

State Farm argues that leave should not be granted because of futility, contending that Vogt fails to state a claim under the MMPA. A district court may deny a motion for leave to amend on the basis of futility if it "has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotations omitted). Therefore, the Court considers whether Vogt's proposed amended complaint states a claim under Rule 12(b)(6).

Vogt requests leave to add a new claim under the MMPA, which allows private actions to recover damages for "a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025. Section 407.020.1 provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

13

Mo. Rev. Stat. § 407.020.1. Vogt contends that the facts already alleged in his Complaint are sufficient to state an MMPA claim: State Farm engages in deceptive and unfair conduct when it informs policyholders that COI Rates will be based on specific factors and then does not reveal to policyholders that it also includes other undisclosed factors to set those rates, which produce inflated rates and COI Charges. State Farm, however, responds that it is exempt from the MMPA because it is an insurance company regulated by the director of the department of insurance. Section 407.020.2(2) provides for this exemption, stating:

> Nothing contained in this section shall apply to . . . [a]ny institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of insurance, financial institutions and professional registration under chapter 354 or chapters 374 to 385, the director of the division of credit unions under chapter 370, or director of the division of finance under chapters 361 to 369, or chapter 371, *unless* such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

Mo. Rev. Stat. § 407.020.2(2) (emphasis added).

First, Vogt contends that State Farm's exemption argument is an affirmative defense, which he is not required to plead around. Even assuming Vogt is correct that this is an affirmative defense, "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *ABF Freight System, Inc. v. Int'l Broth. of Teamsters*, 728 F.3d 853, 861 (8th Cir 2013) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (internal quotation marks omitted)). In this case, the exemption defense is apparent on the face of Vogt's Complaint, which admits that State Farm is a life insurance company registered to do business in the State of Missouri. [Doc. 1, p. 2].

Next, Vogt argues that this exemption for insurance companies does not apply to State Farm because of his attached November 7, 2016 letter from John M. Huff, the Director of the

Department of Insurance, to the Deputy Attorney General. [Exhibit A, Doc. 45-1]. The letter "authoriz[es] the Office of the Attorney General to implement the powers of Chapter 407 . . . for the purpose of investigating State Farm Life Insurance Company and prosecuting any violation of Chapter 407 that your Office may discover." [Exhibit A, Doc. 45-1]. Vogt argues that because this letter evidences that "such directors specifically authorize[d] the attorney general to implement the powers of [Chapter 407]" against State Farm, State Farm is not an exempt defendant and is subject to suits by private citizens. Mo. Rev. Stat. 407.020.2(2).

The November 7 letter, however, merely authorizes the Attorney General of Missouri to investigate and prosecute State Farm; the letter does not authorize private citizens like Vogt to pursue claims against an otherwise exempt defendant like State Farm. To interpret this letter as somehow creating a private right of action under the MMPA against State Farm would be inconsistent with the plain language of Section 407.020.2(2). As stated above, the exception provides in relevant part:

> . . . unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

Mo. Rev. Stat. § 407.020.2(2). The statute's plain language merely provides that the director of insurance can authorize the *Attorney General* to "implement the powers of this chapter," not a private citizen. This is further evidenced by a comparison of the first clause, which provides for an exception by the director's authorization, and the second clause, which provides for an exception by statute. In the second clause, the legislature specifically provides that the exception may apply to private citizens in addition to the attorney general: "or such powers are provided to either the attorney general *or a private citizen* by statute." *Id.* Had the legislature intended for the trigger for the exception—the director's authorization—to be applicable to both

15

the Attorney General and private citizens, it could have included "private citizen" in this clause in the same way that it did in the latter clause, so that it read: "unless such directors specifically authorize the attorney general *or a private citizen* to implement the powers of this chapter." But that is not what the statute provides.

Although Vogt relies on *Fielder v. Credit Acceptance Corp.*, this district court decision is not binding and does not alter the Court's previous conclusion. 19 F.Supp.2d 966 (W.D. Mo. 1998); *see Ctr. For Family Med. v. United States*, 614 F.3d 937, 942 (8th Cir. 2010) ("One district court is not bound by the decision or reasoning of another district court involving other parties with the same issue."). In *Fielder*, private citizen plaintiffs brought suit under the Truth in Lending Act and MMPA against a company that administered retail installment contracts used in the purchase and sale of automobiles. 19 F.Supp.2d at 971, 977. On summary judgment, the defendant argued that it was exempt from liability under the MMPA because it was a company supervised by the Division of Finance. *Id.* at 977. The plaintiffs responded by submitting a letter from the Director of Finance addressed to the Missouri Attorney General stating that he was authorized to implement Chapter 407's powers against the defendant. *Id.* The *Fielder* court concluded that the defendant was not exempt "because the Attorney General was authorized to implement the powers and the 1992 amendment to the statute creates the powers for a private citizen." *Id.* at 977-78, *vacated on other grounds*, 188 F.3d 1031 (8th Cir. 1999).[6] The Court is not persuaded by the conclusion in *Fielder* and instead, already found that the statute allows for the director of insurance to authorize the Attorney General to bring suit, not a private citizen. This Court's previous analysis of the statute is consistent with its plain language.

---

[6] In 1992 and prior to *Fielder*, Section 402.020.2 of the MMPA was amended to add the final clause, "or such powers are provided to either the Attorney General or a private citizen by statute." Mo. Rev. Stat. § 402.020.2.

Case 2:16-cv-04170-NKL   Document 52   Filed 02/03/17   Page 16 of 22

In a footnote, Vogt argues in the alternative that because Section 407.025 authorizes private citizens to bring suit under the MMPA, Vogt's case is brought beyond the reach of the MMPA exemption in Section 407.020.2(2). The Court rejects this argument, as well.

As already discussed, Section 407.020.2(2) specifically exempts from suit under the MMPA those companies like State Farm that are subject to chartering, licensing, or regulation by the Department of Insurance

> . . . *unless* such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

Mo. Rev. Stat. § 407.020.2(2) (emphasis added). Again, Vogt does not dispute that State Farm is subject to chartering, licensing, or regulation by the Department of Insurance and therefore exempt from liability under the MMPA. However, Vogt argues that Section 407.025 of the MMPA provides an exception to this exemption. In other words, implicit in Vogt's argument is the conclusion that the exemption from liability under the MMPA for insurance companies and other regulated entities has been nullified by Section 407.025, which gives private citizens the right to sue under the MMPA. Vogt's argument is based on the 1992 amendment to Section 407.020.2(2), which modified the exemption for regulated entities by adding the following bolded language:

> Nothing contained in this section shall apply to . . . [a]ny institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of insurance, financial institutions and professional registration under chapter 354 or chapters 374 to 385 . . . unless such directors specifically authorize the attorney general to implement the powers of this chapter **or such powers are provided to either the attorney general or a private citizen by statute.**

The above bolded provision providing for this exception was added to Section 407.020.2(2) years after the legislature passed Section 407.025, which provided private citizens with a cause of action under the MMPA. Vogt, however, contends that Section 407.025 qualifies as a statute

17

that provides "such powers" to a private citizen so that exempt defendants are, in fact, subject to suit. Section 407.025, entitled "Civil action to recover damages—class actions authorized, when—procedure," provides:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

Mo. Rev. Stat. § 407.025.1.

When analyzing a statute, the goal is to determine the legislature's intent by giving the statute's language its plain and ordinary meaning. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharm.*, 208 S.W.3d 907, 909-10. "When the legislative intent cannot be determined from the plain meaning of the statutory language, rules of statutory construction may be applied to resolve any ambiguity." *Id.* at 910. Vogt argues that because Section 407.025 gives private citizens the general right to bring MMPA claims, it qualifies as the "powers" provided to "a private citizen by statute" that overcome State Farm's exempt status in Section 407.020.2(2).

The MMPA's statutory language guides this Court's analysis. Section 407.025's plain language provides a private cause of action for practices "declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1. Section 407.020.2(2) does not "declare[] [as] "unlawful" actions taken by Department of Insurance-licensed companies. Mo. Rev. Stat. § 407.025.1. Instead, this section outlines certain regulated entities that are exempt from suit under the MMPA. Giving Section 407.020.2(2) its plain and ordinary meaning, in order for a private citizen to overcome State Farm's exemption from suit under the MMPA, Vogt must identify a statute that grants

18

private citizens the power to enforce Section 407.020 of the MMPA specifically against insurance companies. This is not what Section 407.025 does. Instead, Section 407.025 provides a *general* right to private citizens to bring claims under the MMPA. For these reasons, the Court finds that the legislature did not intend for Section 407.025's provision of a general right to private citizens to sue under the MMPA to also qualify as a statute providing "such powers" to private citizens like Vogt to sue all entities that would otherwise be exempt under Section 407.020.2(2).[7]

Furthermore, even if the Court were to find this statute to be ambiguous on this point, "a golden rule of statutory interpretation instructs that, when one of several possible interpretations of an ambiguous statute produces an unreasonable result, that interpretation should be rejected in favor of another which produces a reasonable result." *Sutherland Statutes & Statutory Construction*, § 45:12, Reasonable consideration. Taken to its logical conclusion, reading the statutes according to Vogt's interpretation would mean that all regulated defendants exempt from private suit under the MMPA, per Section 407.020.2(2), would, in fact, not be exempt from private suit under the MMPA due to Section 407.025. This is because Section 407.025 provides for a general cause of action under the MMPA, which means that it would apply in the same way to every type of exempt entity specified by Section 407.020.2(2). This argument makes Section 407.020.2(2) meaningless because it negates this provision's specific exemption of certain regulated entities from private suit and instead makes them subject to private suit. Such a

---

[7] It is also telling that Section 407.025 was passed before Section 407.020.2(2) was amended in 1992 to add the exception for otherwise exempt defendants with the new language: "or such powers are provided to either the attorney general or a private citizen by statute." Mo. Rev. Stat. § 407.020.2(2). Had the Missouri legislature intended for this 1992 amendment to provide private citizens with the right to bring MMPA claims against *exempt* entities through the power of Section 407.025, it could have specifically referenced "Section 407.025" when adding this exception under Section 407.020.2(2).

19

circular argument violates well-accepted principles of statutory construction. *Accord Rashaw v. United Consumers Credit Union*, 2011 WL 2110806, at *6 (W.D. Mo. May 26, 2011) (same for credit unions), *affirmed by* 685 F.3d 739, 745 (8th Cir. 2012) ("The contention that one provision of the MMPA completely negates another violates well-accepted principles of statutory construction."). Thus, even assuming that Vogt's and the Court's interpretations are both possible, Vogt's interpretation must be rejected in favor of the interpretation that produces a reasonable result. The Court's interpretation produces a reasonable result because it construes Section 407.020.2(2) as permitting a private citizen to bring suit against an otherwise exempt entity under that Section if another statute grants private citizens the power to enforce Section 407.020 of the MMPA specifically against that type of exempt entity. The Court interprets Section 407.025 as granting private citizens the general power to bring claims under the MMPA, which does not satisfy this condition. Because at present, there is no statute authorizing a private citizen to bring an MMPA claim against exempt insurance companies like State Farm, Vogt's MMPA claim is barred by Section 407.020.2(2).

Other court decisions come to the same conclusion. Of the three Missouri state cases cited by the parties, two of the three, both of which were decided more recently in 2016, rejected the argument made by Vogt. In *Simon v. Blue Cross & Blue Shield of Kansas City*, the Circuit Court of Jackson County considered the private plaintiff's argument—like that of Vogt—that Section 407.025 negated the exemption for the defendant insurance company provided in Section 407.020.2(2). *Simon*, Case No. 1416-CV12765 (Mo. Cir. Ct. Jan 6, 2016). After analyzing the statututory provisions by applying their plain meaning, the state circuit court rejected this argument and dismissed the plaintiff's MMPA claim against the defendant insurance company as barred by Section 407.020.2(2). *Id.* The court further expressed that it "[wa]s persuaded by the

reasoning applied [by the Eighth Circuit] in *Rashaw v. United Consumers Credit Union . . .* that any other interpretation would be circular and in violation of the statutory rules of construction." *Id*. A second 2016 case by the same judge came to the same conclusion. *See Riley v. JCN Inc. Auto et al.*, Case No. 1416-CV22896 (Mo. Cir. Ct. Jan. 6, 2016) (setting aside its September 17, 2015 order denying defendant's motion for judgment on the pleadings on the issue of whether the MMPA exemption barred plaintiff's case against it and instead, dismissing the MMPA claim with prejudice);[8] *see also Myers v. Sander*, 2014 WL 40901, at *7 (E.D. Mo. Feb. 3, 2014) (interpreting MMPA and rejecting plaintiff's argument that § 407.025 overcomes the exemption in § 407.020.2(2) for title insurance companies).

For the previous reasons, the Court is also not persuaded by Vogt's reliance on *Marra v. Lititz Mut. Ins. Co.*, the only state court decision cited that accepted Vogt's argument. *Marra*, Case No. 1116-CV20478 (Mo. Cir. Ct. Mar. 29, 2013). Not only was *Marra* decided in the same circuit court several years before *Simon* and *Riley*, both of which came to the opposite conclusion, but the *Marra* opinion also did not provide any statutory analysis or explanation for its contrary finding. Instead, the five sentence opinion devoted only one sentence to accepting the argument that Section 407.025 overcame the defendant's exempt status in Section 407.020.2(2). *Compare Marra*, Case No. 1116-CV20478 (Mo. Cir. Ct. Mar. 29, 2013) (finding "that while § 407.020.2(2) specifically excludes application of the MMPA to any institution, company, or entity subject to chartering, licensing or regulation by the director of the department of insurance, Plaintiff's contention that § 407.025 permits a private cause of action against regulated industries as an exception to § 407.020.2(2) is valid") *with Simon*, Case No. 1416-

---

[8] The *Simon* court specifically acknowledged the decision in *Riley* and its later reversal upon reconsideration, stating: "In reaching this decision, the Court acknowledges the ruling is contrary to the ruling previously entered in *Riley v. JCN Inc. Auto et al.*, Case No. 1416-CV22896. That ruling has been revisited and contemporaneously with this Judgment, has been reversed."

Case 2:16-cv-04170-NKL   Document 52   Filed 02/03/17   Page 21 of 22

CV12765 (Mo. Cir. Ct. Jan 6, 2016) (dedicating one page to interpreting the statutory provisions and finding this argument to be circular and in violation of the statute's plain language).

As a company regulated by the director of insurance, State Farm is exempt from Vogt's private claim under the MMPA. Because adding this MMPA claim against State Farm would be futile, Vogt's motion for leave to amend his Complaint is denied.

## III. Conclusion

For the previous reasons, Defendant State Farm's motion to dismiss is granted in part and denied in part. State Farm's motion to dismiss is granted for Vogt's Count III, conversion. Dismissal is denied for the remainder of Vogt's claims. Plaintiff Vogt's motion for leave to amend, Doc. 31, is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 3, 2017
Jefferson City, Missouri