UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MICHAEL G. VOGT, Individually and )
On Behalf Of All Others Similarly Situated, )
)
Plaintiffs, )
)
vs. ) Case No. 2:16-cv-04170-NKL
)
STATE FARM LIFE INSURANCE COMPANY, )
)
Defendant. )

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND SUGGESTIONS IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), and pursuant to the Court's inherent authority to reconsider non-final, interlocutory rulings, Plaintiff Michael G. Vogt ("Plaintiff" or "Vogt"), by and through his undersigned counsel, respectfully moves the Court for reconsideration of its order granting in part Defendant State Farm Life Insurance Company ("State Farm")'s motion to dismiss (Dkt. #52). In support of this motion, Plaintiff states as follows:

## STANDARD FOR RECONSIDERATION

"A district court has broad discretion in determining whether to grant Rule 59(e) and Rule 60(b) motions." *Boergert v. Kelly Servs., Inc.*, No. 2:15-CV-04185-NKL, 2017 WL 440272, at *2 (W.D. Mo. Feb. 1, 2017) (citing *In re Levaquin Products Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014), and *Innovative Home Health Care, Inc. v. P.T.–O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). A motion to reconsider generally serves "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Arnold v. Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010)).

In addition or in the alternative to Rules 59 and 60, the Court has inherent authority to reconsider its order granting in part State Farm's motion to dismiss because it is a non-final, interlocutory order. *See Garrett v. Albright*, No. 4:06-CV-4137-NKL, 2008 WL 268993, at *2 n.2 (W.D. Mo. Jan. 30, 2008) ("A district court has inherent authority to reconsider interlocutory orders."); *see also* Fed. R. Civ. P. 54(b); *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031 SWW, 2013 WL 11374521, at *3 (E.D. Ark. Jan. 7, 2013).

## ARGUMENT

On February 3, 2017, this Court entered its Order granting in part and denying in part State Farm's motion to dismiss. Dkt. #52. The Court concluded that each of Vogt's claims was timely filed and, on that basis, denied State Farm's motion to dismiss Vogt's breach of contract, conversion, and declaratory judgment claims on this basis. *Id.* at 9. The Court, however, granted State Farm's motion to dismiss Vogt's conversion claim on the basis of the economic loss doctrine. In doing so, the Court concluded that "Vogt and State Farm have a relationship based in contract, and Vogt's conversion claim is dependent on his breach of contract claims," and that Vogt's conversion claim "will rise or fall based on the Court's interpretation of the policy contract" in that "whether State Farm converted funds from Vogt's account or rightfully deducted them depends on whether State Farm breached its contract under the policy by using unlisted factors in its rate and charge calculations." *Id.* at 10-11.

Respectfully, this Court's conclusion that the economic loss doctrine bars Vogt's conversion claim is a manifest legal error.

### A. PLAINTIFFS' CONVERSION CLAIM SHOULD, AT A MINIMUM, BE PERMITTED TO BE PLED IN THE ALTERNATIVE.

First, the Court did not address Vogt's argument that, at the very least, he should be permitted to assert his conversion claim as an alternative theory of recovery. *See* Dkt. #22 at 13-

2

14 (citing Fed. R. Civ. P. 8(d)(2) (a party may "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones")). In particular, Vogt's Policy states that the Cost of Insurance ("COI") Rate will be "based on the Insured's age on the policy anniversary, sex, and applicable rate class." Complaint, ¶ 28. Vogt contends the term "based on" is one of exclusivity that prohibits State Farm from considering factors in the COI Rate that are not disclosed in the Policy, and will further argue that State Farm did not provide itself authorization in the Policy to deduct money from his and class members' Account Values using undisclosed factors. In *Alleman v. State Farm Life Ins. Co.*, the Third Circuit interpreted similar language in another of State Farm's policies and reached the same conclusion *in State Farm's favor*. *See* 334 Fed. Appx. 470, 472 (3rd Cir. 2009) (affirming summary judgment in State Farm's favor, and rejecting the plaintiff insured's argument that the provision in a life insurance policy stating the COI charge would be "*based on the Insured's age last birthday and sex*" should be read to include other undisclosed factors, because "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to the rate …." (emphasis added)). Expectedly, State Farm will try to reverse course from *Alleman*, and argue in this case that "based on" is not a term of exclusivity, and thus that its deductions were not prohibited by the Policy. But even if the Court concludes that the COI Rates provision in Vogt's Policy does not *prohibit* State Farm from considering other factors when calculating COI Rates, it may further conclude that nothing in this provision or elsewhere in the Policy provides State Farm *with the authority* to include additional undisclosed factors in its calculation of the rate. In that event, the Court may ultimately conclude that State Farm did not expressly breach the COI Rates provision, but that it did take Vogt's money

3

without authorization, thus establishing a claim for conversion;[1] and Vogt's conversion claim would not "rise or fall" based on the Court's interpretation of the Policy.

**B. MISSOURI LAW DOES NOT PROHIBIT CONVERSION CLAIMS BASED SOLELY ON ECONOMIC LOSSES.**

Second, and respectfully, the Court's Order overstates the reach of the economic loss doctrine ("ELD") in Missouri. As a leading torts author explains, the notion that "there is but one overarching economic loss rule is misleading." Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 607 (2d ed.). Jurisdictions have adopted a "number of 'general' economic loss rules" all of which "must be understood as general rules, subject to conditions or exceptions and . . . applied with a reasonable sense of their purpose." *Id.* In a recent District of Kansas case, Judge Lungstrum surveyed the doctrine in twenty-two states and similarly remarked that "courts have indeed at times overstated the scope of the ELD by stating it as an absolute rule (and therefore without exceptions) or by referring to tort claims generally (instead of to negligence and strict liability claims)." *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1195 (D. Kan. 2015).

In Missouri, as elsewhere, the ELD arose in negligence and strict-liability cases to preserve the distinction between tort claims sounding in warranty; otherwise, every breach of a warranty could be construed as negligence. *See Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978) ("liability imposed for mere deterioration or loss of bargain resulting from latent structural defects is contractual"); *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. Ct. App. 2010) ("the common thread running through these

---

[1] *See Hunt v. Estate of Hunt*, 348 S.W.3d 103, 114 (Mo. Ct. App. 2011) (to prevail on a claim for conversion, the plaintiff must show "(1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession").

cases is the effort to impose tort liability on the builder of a home, or to recover in tort for the failure of a product which is alleged to be defective"); *see also Self v. Equilon Enterprises, LLC*, No. 4:00CV1903TA, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005) ("The doctrine was judicially created to protect the integrity of the UCC bargaining process.")).

The Missouri Supreme Court adopted the ELD to preserve that distinction where a claim is based on the "loss of [the] bargain." *See Crowder*, 564 S.W.2d at 882 ("[W]here mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of quality. This standard of quality must be defined by reference to that which the parties have agreed upon. In the absence of some express agreement to the contrary, the standard of quality will be presumed to be that of the implied warranty term reasonable fitness for use as a residence."). In such cases, there is no independent duty at common law to which one must conform his or her conduct; rather, "the remedy would be dependent in every instance upon the implied warranty term." *Id.* at 883. The Missouri Supreme Court has never extended the ELD beyond its traditional moorings as policing the boundaries between warranty and negligence / strict liability. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130-31 (Mo. banc 2010) ("Under Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC."); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986) (ELD denies "recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold"). Thus, in Missouri, the ELD does not "bar an action in tort if the contract recognizes a special relationship" that gives rise to an independent tort duty. *Autry*, 332 S.W.3d at 193.

Evidence that the Missouri Supreme Court continues to adhere to this understanding is found in *Children's Wish Foundation International, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648 (Mo. banc 2011). In that case, the Missouri Supreme Court held that comparative-fault principles applied to "claims of economic losses caused by professional negligence." *Id.* at 653. It rejected the argument that "because this case involves a contractual relationship, it is inappropriate to apply comparative fault because the parties can allocate risk of loss in the contract." *Id.* As the Court reasoned, "importantly," a claim for professional negligence "is not premised on the contract," but rather "on the professional duty recognized by law that arises from the relationship created by the accountant-client relationship." *Id.*

Citing two intermediate court decisions, the Missouri Supreme Court held that "[t]he economic loss doctrine does not apply in this case. Missouri recognizes tort liability in professional negligence cases involving only economic loss." *Id.* at 652 n.2. Tellingly, it did not single out "professional negligence" cases categorically, but quoted approvingly from *Business Men's Assurance Co. of America v. Graham,* 891 S.W.2d 438 (Mo. Ct. App. 1994), that "tort recovery [is] permitted when a client 'sues for breach of a duty recognized by law as arising from the relationship or status the parties have created by their agreement.'" *Id.* at 453.

That case involved a claim for professional negligence against an architect for failing to comply with its "duty to provide professional architectural services in a manner consistent with the skill and competence of other members of its profession." *Id.* at 454. The Missouri Court of Appeals expressly characterized Missouri's ELD jurisprudence as having been limited to policing the boundaries of warranty and negligence (or strict liability) claims. Contrasting it with cases where the ELD was a bar to recovery, the Missouri Court of Appeals held that the ELD has "been applied in the context of actions against manufacturers of defective products.

6

These cases are distinguishable from the instant case because they either do not involve a professional's common law duty of care or they involve claims asserted under the theory of strict liability in tort." *Id.* at 454.

In other words, under *Children's Wish Foundation* and *Business Men's Assurance*, the existence of a contract between the parties cannot be a *per se* bar to recovery. Rather, the "relationship or status" of the parties as "created by" an agreement can itself be a basis where that relationship implicates an existing duty "recognized by law." *See* Dkt. #22 at 12-13.

Perhaps even more apt, in *Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 10 (Mo. banc 2012), the Missouri Supreme Court similarly swept aside a defendant's attempt to use the ELD to block the enforcement of independent tort duties between an insured and his insurance broker, even though that relationship also arose by contract. The insured claimed his insurance broker received undisclosed "contingent commissions for steering business to a particular insurer." *Id.* at 10. The Missouri Supreme Court dispensed with the argument that the insured's claims "only relate to breach of contract and do not sound in tort" with a single footnote, stating that "the negligent failure to observe and perform any portion of [a fiduciary] duty gives rise to an action in tort as well as an action for breach of contract." *Id.* at 12 n.4 (quoting *Autry,* 332 S.W.3d at 193). In citing *Autry*, the Missouri Supreme Court expressed no disagreement with the following rule: while Missouri courts "have never recognized the mere breach of a contract as providing a basis for tort liability,"[2] the mere fact that "the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort" is no bar to recovery. *Autry*, 332 S.W.3d at 193 (quoting *Am. Mort. Invest. Co.*

---

[2] To this point, it would be one thing if Vogt was arguing that State Farm was liable for negligently performing its contract with Vogt. But Vogt has not brought a negligence claim. Rather, he contends that State Farm converted money that Vogt deposited with State Farm from its intended purpose.

*v. Hardin–Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984)). "In this latter instance, it is the act and not the breach of the contract which serves as the basis for the tort claim." *Id.*; *accord Davidson v. Hess*, 673 S.W.2d 111, 112-13 (Mo. Ct. App. 1984) ("the action may be one in tort, even though the breach of duty may also be a violation of the terms of the contract"). Thus, *Emerson* further supports that the Missouri Supreme Court would not extend the ELD beyond its original foundations of preserving the independent law of warranty. This case does not involve negligence or strict liability. Nor does it implicate the boundaries between such claims and the law of warranty.

The cases relied on by the Court in its Order do not undermine these articulations of the ELD in Missouri. Dkt. #52 at 10 (citing *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010), *HHCS Pharm., Inc. v. Express Scripts, Inc.*, 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016), and *Self v. Equilon Enterprises, LLC*, 2005 WL 3763533, at *11 (E.D. Mo. March 30, 2005)). In *Dubinsky*, the Eighth Circuit found that it "need not reach the issue of the economic loss doctrine" because the negligence claim was merely an "enforcement action under" the contract and the plaintiff did not obtain written permission to sue as required by their contract. 595 F.3d at 919. In *HHCS Pharmacy*, as an initial matter, the "plaintiff [did] not refute" that their tortious interference claim was barred by the economic loss doctrine. 2016 WL 7324968, at *5. Moreover, that case relied on *Self*, 2005 WL 3763533, at *11, but significantly broadened its prediction of Missouri law made in *Self* without any added analysis.

In *Self*, the federal district court predicted that "the Missouri Supreme Court would resolve the legal issue by holding that, in a suit involving a commercial transaction between merchants, a fraud claim to recover economic losses must be of the contract or such claim would be precluded by the economic loss doctrine." *Id.* at *11. But *Self* did not have the benefit of the

8

two most recent Missouri Supreme Court decisions discussed above, *Children's Wish Foundation* and *Emerson Electric*, both of which adopt intermediate appellate court decisions holding that where the tort duty is independent of the contract, it is not barred by the ELD. Moreover, in *Self*, the magistrate judge reasoned that "plaintiffs' claims for damages are not above and beyond any mere disappointed commercial expectations or desire to enjoy the benefit of the" bargain reached in the contract. *Id.*

Unlike *Self*, this case does not involve a commercial transaction between sophisticated parties, nor is it a suit for economic damages based on "mere disappointed commercial expectations," which would arguably harken back to the justification for the ELD adopted in *Crowder*, "where mere deterioration or loss of bargain is claimed." 564 S.W.2d at 882. Vogt's conversion claim is not premised on the loss of his bargain with State Farm. Instead, based on their special relationship, Vogt deposited monies in his Policy account and expected State Farm to use it for one purpose, but State Farm converted that money by taking it and moving it to its own account. This is no less a violation of State Farm's common law duty than a professional, like an architect or insurance broker, who violates a common law duty owed to a client by virtue of their relationship.

To read *Self* as barring a conversion claim in this case would effectively abrogate all conversion claims arising from the diversion of funds provided by a plaintiff for one purpose but used by the defendant for another. This would be a drastic departure from existing Missouri law, as articulated by the Missouri Supreme Court, which has held that where "funds [are] placed in the custody of another for a specific purpose" but the holder "diver[ts]" those funds from "such specified purpose" he or she is liable to "the holder … in conversion." *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. banc 1981); *see also Johnson v. GMAC Mortg. Corp.*, 162 S.W.3d 110, 125

(Mo. Ct. App. 2005) (where a "plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant," the allegations are "sufficient for a conversion claim"); Dkt. #22 at 10-11 (citing additional cases). In all, or nearly all, such circumstances, an express or implied contract would be at issue with respect to the intended purpose of the funds. *See Reason v. Payne*, 793 S.W.2d 471, 474 (Mo. Ct. App. 1990) (recognizing claim for conversion of a savings account); *Dayton Const., Inc. v. Meinhardt*, 882 S.W.2d 206, 208-09 (Mo. Ct. App. 1994) (recognizing claim for conversion based on deposit of checks into the defendant's separate bank account instead of the joint account of the plaintiff and defendant, as agreed). And in all such cases, proving conversion would necessarily also prove that the holder exceeded the scope of his authorization – what he or she was authorized to use the money for by terms of the contract. To hold that such claims are barred by the ELD would be to preclude those claims entirely, even though nothing in the ELD jurisprudence of the Missouri Supreme Court countenances such an expansion. To the contrary, a duty not to convert, even if it arises as a result of a contractual relationship, exists independently of the contract.

This Court held that "whether State Farm converted funds from Vogt's account or rightfully deducted them depends on whether State Farm breached its contract under the policy by using unlisted factors in its rate and charge calculations." Dkt. #52 at 11. Respectfully, this does not answer whether the ELD applies because, under Missouri law, an act can constitute both a breach of contract and a tort without the tort being barred by the ELD. *See Autry*, 332 S.W.3d at 193 (the mere fact that "the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort" is no bar to recovery); *Davidson*, 673 S.W.2d at 112-13 ("the action may be one in tort, even though the breach of duty

may also be a violation of the terms of the contract"). Vogt's conversion claim arises from State Farm's independent duty not to appropriate his funds, deposited for one purpose, and use them for another purpose. That State Farm's act may constitute both a breach of that independent duty and a breach of the contract does not preclude the tort claim.

In addition to the cases cited above, Missouri courts have routinely rejected application of the ELD, even in cases where the parties had a contractual relationship, if the particular duty alleged to have been breached arose from the common law, as opposed the breach of the contract itself. *E.g., School Dist. of Independence v. U.S. Gypsum Co.*, 750 S.W.2d 442 (Mo. Ct. App. 1988) (duty to prevent contamination by asbestos); *Laidlaw Waste Sys., Inc. v. Mallinckrodt*, 925 F. Supp. 624 (E.D. Mo. 1996) (duty to prevent contamination by hazardous waste).

As alleged, State Farm held Vogt's money in trust for Vogt's benefit. Complaint, ¶ 2. When State Farm deducted more money from Vogt's Account Value than it was authorized to deduct, it breached Vogt's property right to his money, independently of any obligations created by the Policy. Missouri law does not bar an action in tort where the parties have a special relationship, like the one Vogt alleges here. *Autry*, 332 S.W.3d at 193 (holding economic loss doctrine did not apply where the plaintiff's tort claim "ar[ose] from the rendering of services to be provided by a contract and [where] the conduct of [the defendants] [was] the basis of the allegations and not the state of a home or product," *id.* at 194); *Bus. Men's Assur. Co.*, 891 S.W.2d at 453 ("The action may be in tort ... if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement.") (citing *American Mortg. Inv. Co.*, 671 S.W.2d at 290). Thus, Missouri's ELD does not bar Vogt's conversion claim here, and the Court's reliance on it to grant State Farm's motion to dismiss Vogt's conversion claim was, respectfully, a manifest error of law warranting

reconsideration. Under these circumstances, reconsideration is warranted to permit Vogt to plead and pursue his conversion claim.

## CONCLUSION

Plaintiff respectfully requests that this Court grant reconsideration and, upon correction of the manifest error of law identified herein, enter an order denying in its entirely State Farm's motion to dismiss.

Dated: February 20, 2017                    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Norman E. Siegel*
Patrick J. Stueve            MO Bar # 37682
Norman E. Siegel             MO Bar # 44378
Lindsay Todd Perkins         MO Bar # 60004
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:         stueve@stuevesiegel.com
Email:         siegel@stuevesiegel.com
Email:         perkins@stueveseigel.com

- And -

John J. Schirger             MO Bar # 60583
Matthew W. Lytle             MO Bar # 59145
Joseph M. Feierabend         MO Bar # 62563
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:     816-561-6500
Facsimile:     816-561-6501
Email:         jschirger@millerschirger.com
Email:         mlytle@millerschirger.com
Email:         jfeierabend@millerschirger.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 20, 2017, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

            /s/ *Norman E. Siegel*
            Attorney for Plaintiff