UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL G. VOGT, Individually and On Behalf Of All Others Similarly Situated, ) ) ) Plaintiffs, ) ) vs. ) ) STATE FARM LIFE INSURANCE COMPANY, ) ) Defendant. ) | Case No. 2:16-cv-04170-NKL |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

State Farm fails to persuasively challenge the many cases showing Missouri only applies the economic loss doctrine ("ELD") in discrete situations and for reasons not applicable here that Vogt cited in his opening brief. State Farm also fails to adequately dispute that this Court could conclude State Farm did not breach the COI provision of the Policy and, at the same time, conclude State Farm did not have the authority to deduct undisclosed expenses from policyholders' Account Values, such that Vogt thus states a claim for conversion even if his breach of contract claim fails. At a minimum, therefore, Vogt should be permitted to plead his conversion claim as an alternative theory of recovery. Finally, Vogt seeks reconsideration of the question of whether the ELD applies, so State Farm's attempts to bolster its arguments on the separate issue of whether Vogt's allegations otherwise state a claim for conversion are improper. Those improper efforts notwithstanding, Vogt's allegations—that State Farm took money placed in its possession for one purpose and diverted it to another, and that Vogt will be able to identify the specific dollar amount taken—sufficiently state a claim for conversation. Because the ELD does not apply, Vogt's motion for reconsideration should be granted.

## ARGUMENT

### A. VOGT'S MOTION FOR RECONSIDERATION IS PROCEDURALLY PROPER.

State Farm contends reconsideration is precluded because Vogt did not cite case law that could not have been cited in opposition to State Farm's motion to dismiss. (Dkt. #60 at 2-3). State Farm misstates the standard. Reconsideration is appropriate if the moving party "demonstrates a showing of <u>manifest error in the prior ruling</u> *or* demonstrates <u>new facts or legal authority</u> that the party could not have previously produced with reasonable diligence to the court." *Tussey v. ABB, Inc.*, No. 2:06-CV-04305-NKL, 2012 WL 5512389, at *1 (W.D. Mo. Nov. 14, 2012) (emphasis added). State Farm's singular focus on the absence of any "new" legal authority ignores the fact that Vogt seeks reconsideration on the basis of "manifest error," which is a separate, alternative basis for reconsideration under the applicable standard. Moreover, State Farm does not dispute that, because it is a non-final, interlocutory order, the Court has inherent authority, separate and apart from Rule 59(e) or 60(b), to reconsider the order granting in part State Farm's motion to dismiss. (*See* Dkt. #56 at 2).

### B. AT A MINIMUM, THE COURT SHOULD PERMIT VOGT TO PLEAD HIS CONVERSION CLAIM IN THE ALTERNATIVE.

State Farm argues that there is no scenario in which this Court could conclude that State Farm did not breach the Policy, but still lacked authority to deduct money based on undisclosed factors. (Dkt. #60 at 8). In other words, State Farm argues that if the Policy does not expressly give State Farm authority to deduct money based on undisclosed factors, then it is in breach of the Policy. While Vogt appreciates State Farm's concession that any authority to deduct money from policyholders' Account Values must be expressly provided by the Policy, the Court may disagree and interpret the Policy to neither prohibit nor authorize State Farm's conduct.

2

Accordingly, at a minimum, Plaintiff should be permitted to plead his conversion claim in the alternative.

### C. MISSOURI'S ECONOMIC LOSS DOCTRINE DOES NOT BAR VOGT'S CONVERSION CLAIM.

State Farm's response to Vogt's argument that the ELD does not apply to bar his conversion claim misses the mark. First, State Farm argues that the ELD applies because State Farm and Vogt have a relationship based on contract. But under Missouri law, "tort recovery [is] permitted when" the claim is for "breach of a duty recognized by law as *arising from the relationship or status the parties have created by their agreement.*" *Business Men's Assurance Co. of America v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994) (emphasis added). Thus, that State Farm and Vogt have a relationship created by the Policy is no answer where the common law recognizes a duty not to take another's money without authorization.

Second, State Farm argues that Vogt and State Farm do not have a special relationship, and contends that, as a general rule insurers do not have a fiduciary duty to their insureds. (Dkt. #60 at 5). But in *C.F.C.S. Investments, LP v. Transamerica Occidental Life Insurance Co.*, No. 4:16-CV-00396 JAR, 2017 WL 282403 (E.D. Mo. Jan. 23, 2017), the case State Farm cites, the court concluded that the plaintiff *had* stated a claim for negligence and breach of fiduciary duty against the insurer for wrongfully lapsing a policy. *Id.* at *3.[1] See also Murphy v. Northwest Mut. Ins. Co.*, No. 03-0864CV-W-HFS, 2005 WL 1421789 (W.D. Mo. June 13, 2005) (holding plaintiff stated claim for breach of fiduciary duty where plaintiff alleged that defendant insurance agent acted as an investment advisor and that he reasonably placed his trust and confidence in the agent's financial advice concerning his retirement). Likewise, "[i]nsurance contracts are

---

[1] Notably, the Court also concluded that the plaintiff's tort claims could be asserted along-side its breach of contract claim. *Id.*

generally considered significantly different than most other types of contracts," and "[i]n recognizing the special nature of the relationship between the parties to an insurance contract, courts have characterized the insurer-insured relationship as Contractual, Special, Fiduciary, [and] Quasi-fiduciary." 14 Couch on Ins. § 198:7 (citing, among other cases, *America, Inc. v. Travelers Ins. Co.*, 292 F.3d 567, 573 (8th Cir. 2002) ("Missouri courts have consistently recognized an insurer's right to control settlement and litigation under a liability insurance policy creates a fiduciary relationship between insurer and insured.")). Thus, there is no rule that a fiduciary relationship cannot exist between an insurer and an insured, and in fact, courts across the country recognize the special relationship between insurer and insured. *See id.*

Where he claims State Farm held funds in policyholders' Account Values in trust for the policyholders' benefit, Vogt alleges just such a relationship. Complaint at ¶¶ 2, 20. As such, Vogt has alleged a duty by State Farm not to divert money it held for the benefit of policyholders for its own benefit. *See Murphy v. Nw. Mut. Ins. Co.*, No. 03-0864CV-W-HFS, 2005 WL 1421789, at *3 (W.D. Mo. June 13, 2005) ("The question in determining whether a fiduciary or confidential relationship exists is whether or not trust is reposed with respect to property or business affairs of the other. A confidential relationship exists when one person relies upon and trusts the other with the management of his property and attendance to his business affairs, thereby creating *some degree* of fiduciary obligation.") (citing *Shervin v. Huntleigh Securities Corp.*, 85 S.W.3d 737, 741 (Mo. Ct. App. 2003)). Whether that duty is a "fiduciary" one is beside the point, because Vogt's allegations at least establish a special relationship between State Farm and Vogt that avoids any bar to his claim based on the ELD. Thus, the cases cited in Vogt's opening brief holding that the ELD does not apply to bar claims for economic losses

where the parties have a special relationship, even where that relationship was created by a contract, require the same conclusion in this case. (*See* Dkt. #56 at 5-8).

Third, State Farm fails to distinguish *Johnson v. GMAC Mortgage Corp.*, 162 S.W.3d 110 (Mo. Ct. App. 2005), *Reason v. Payne*, 793 S.W.2d 471 (Mo. Ct. App. 1990), and *Dayton Construction, Inc. v. Meinhardt*, 882 S.W.2d 206 (Mo. Ct. App. 1994), each holding that a conversion claim is stated where a defendant diverts funds contrary to the plaintiff's instructed purpose for those funds. State Farm argues that these cases do not support Vogt's argument that the ELD does not apply here because no express contract existed between the parties in these cases regarding the plaintiff's instructions for the funds. (Dkt. #60 at 5-6). State Farm is wrong. *See Dayton Constr.*, 882 S.W.2d at 209 ("*The agreement of the parties* required that Mr. Meinhardt deposit all checks or drafts received as payment for remodeling work into the Dayton joint account.") (emphasis added). And even if no written contract exists, an implied contract is created when parties agree that one party will take possession of funds for a specified purpose. More importantly, the courts in these cases did not even mention the ELD as a potential bar to the plaintiffs' claims. Thus, each of these cases supports Vogt's argument that a conversion claim may be stated where a defendant takes money entrusted to it for one purpose and uses it for another purpose, even if the parties have a contract setting forth their agreement as to the purpose for the money. *See Reason*, 793 S.W.2d at 474 (noting that "[m]onies in a fund *secured by a creditor's security agreement* over a bankruptcy debtor's accounts receivables can also be collected by an action in conversion") (emphasis added).

Fourth, State Farm completely fails to refute Vogt's showing that, in Missouri, the ELD has *only* been applied to retain the distinction between negligence/strict liability and breach of warranty in cases involving claims for product or construction defects, *see* Dkt. #56 at 4-5. This

5

is not such a case. Vogt does not allege claims for product or construction defects, nor does he allege State Farm negligently performed its contractual duties. In fact, Vogt does not allege the mere failure to perform at all.[2] Rather, Vogt alleges that State Farm committed the intentional tort of conversion by *knowingly* deducting more money from Vogt's Account Value than it was authorized to deduct. There is no Missouri case in which claims that a defendant's intentional conversion also violated the terms of a contract were dismissed on the basis of the ELD. *Cf. Davidson v. Hess*, 673 S.W.2d 111, 112-13 (Mo. Ct. App. 1984) (recognizing that where a tenant was wrongfully evicted and the landlord retained the tenant's property, the landlord committed an act of tortious conversion independent of the contract).

Fifth, there is no logic to State Farm's argument that a conversion claim must not be recognized in order to preserve the parties' bargaining relationship, Dkt. #60 at 6. The parties did not bargain over the terms of the Policy. *See* Complaint at ¶ 15. State Farm drafted and presented it, and policyholders had to either take it or leave it. Further, the Policy does not contemplate the result in a situation where State Farm systematically and secretly engineered its COI deductions to line its pockets, which is precisely the situation alleged here. Put simply, the Policy nowhere suggests that Vogt bargained away the right to not have his money converted.

Because it does not bar Vogt's conversion claim, the Court's reliance on Missouri's ELD to grant State Farm's motion to dismiss Vogt's conversion claim was, respectfully, a manifest error of law. Under these circumstances, reconsideration is warranted to permit Vogt to plead and pursue his conversion claim.

---

[2] As such, State Farm's reliance on *Mile Rail, LLC v. Compass Big Blue, LLC*, No. 15-0116-CV-W-FJG, 2015 WL 4928684 (W.D. Mo. Aug. 18, 2015), where the plaintiff was barred from asserting a claim for negligence based on the defendant's failure to remediate pollution on property purchased by the plaintiff pursuant to a contract, is entirely misplaced.

### D. VOGT STATES A CLAIM FOR THE CONVERSION OF MONEY.

In its motion to dismiss, State Farm devoted only one paragraph to its argument that money was not a proper subject for a claim for conversion under Missouri law. (Dkt. #13 at 9). In his opposition, Vogt showed that State Farm was wrong, because "money can be an appropriate subject of conversion when it can be described or identified as a specific chattel," *In re Estate of Boatright*, 88 S.W.3d 500, 506 (Mo. Ct. App. 2002), or "where the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant." *Johnson*, 162 S.W.3d at 125; *Estate of Boatright*, 88 S.W.3d at 506. (*See* Dkt. #22 at 10-12). Because it is not an issue on which reconsideration is sought, State Farm's current attempt to bolster its argument for dismissal on this basis is improper. In any event, State Farm's new arguments on this point still fail, because Vogt satisfies both paths to stating a conversion claim for money described in *Estate of Boatright*.

First, although expert testimony may be required, the amounts of unauthorized COI Charges and Expense Charges State Farm took from Vogt and the Class are capable of determination, to an identified sum-certain, by comparing Vogt's actual COI Charge each month to a COI Charge computed using a monthly COI Rate determined using the factors disclosed in the Policy and Class Policies. Complaint at ¶ 70. In other words, the amount converted is the difference between what State Farm was authorized to deduct and what it actually deducted. That Vogt does not yet know the specific amount State Farm converted is meaningless. Although State Farm contends otherwise, there is no case requiring that the specific sum converted be known and stated at the pleadings stage. In fact, in *Dayton Construction*, the court held the plaintiff had stated a claim for conversion because the allegedly converted checks were

specifically identified *at trial*. 882 S.W.2d at 209. Vogt will know the amount converted as soon as State Farm produces the necessary discovery from which it can be determined. Thus, the fact that State Farm hides its method for computing the COI Rate is not a valid basis to deprive Vogt of the right to bring a conversion claim.

Second, Vogt alleges he placed money in State Farm's possession for a specific purpose, to be applied consistently with the terms of the Policy, and that State Farm misappropriated his money by diverting it for its own use in contravention of the Policy. *Id.* at ¶ 68. These allegations provide an additional basis to conclude that Vogt's conversion claim for money is proper. *Johnson*, 162 S.W.3d at 125; *Estate of Boatright*, 88 S.W.3d at 506.

State Farm's reliance on *Allison v. Security Benefit Life Insurance Co.*, 980 F.2d 1213 (8th Cir. 1992) is misplaced. That case addressed only whether the plaintiffs had established a right to punitive damages under Arkansas law, which requires a showing of intent by the defendant to violate the plaintiff's rights to their property and to cause damages. *City Nat. Bank of Fort Smith v. Goodwin*, 783 S.W.2d 335, 338 (Ark. 1990). The Eighth Circuit concluded the plaintiffs could not make this showing, finding the defendant's behavior was based on its belief that it was acting consistently with its legal rights under the insurance contract. *Allison*, 980 F.2d at 1216.

Unlike *Allison*, the issue here is not, at this juncture, whether Vogt is entitled to punitive damages; it is whether he has stated a claim. In any event, Vogt does not allege State Farm believed it was acting consistently with its legal rights. Rather, Vogt contends that State Farm admits that a rate "based on" factors explicitly identified in the Policy must be determined using only those identified factors, Complaint at ¶ 29, and that it knowingly used undisclosed factors anyway. *Id.* at ¶¶ 36-37. Thus, *Allison* is no help to State Farm.

Likewise, *Dwyer v. Unit Power, Inc.*, 965 S.W.2d 301 (Mo. Ct. App. 1998) is inapposite. In *Dwyer*, the court of appeals held that a corporation could not state a claim for conversion against officers of a company that withdrew money from the corporation's accounts where the officers had authority to withdraw money from the corporation's accounts. *Id.* at 306. In concluding that the officers' authority to withdraw money from the corporation's accounts defeated a claim for conversion, the court relied on *R.H. Kobusch Furniture & Carpet Co. v. Loewenberg*, 185 S.W. 747 (Mo. App. 1916), a case involving similar facts. But in *R.H. Kobusch*, the court's holding was expressly based on the lack of evidence that "the money was [e]ntrusted to defendant for any particular purpose." *Id.* at 747. Here, unlike in *R.H. Kobusch* and *Dwyer*, Vogt alleges that the funds held in the Account Value of the Policy and Class Policies are policy owner property that State Farm holds in trust for policy owners. Complaint at ¶¶ 2, 20. Thus, State Farm's authority to deduct a COI Charge based on disclosed factors does not preclude a conversion claim alleging that State Farm deducted additional money held in trust for the benefit of policyholders based on undisclosed factors.

Additionally, *Dwyer's* holding directly conflicts with Missouri Supreme Court precedent. In *Dillard v. Payne*, 615 S.W.2d 53 (Mo. 1981), a former client sued his attorney and his assistant for return of money deposited by the client with his attorney for expenses in connection with a contemplated lawsuit. *Id.* at 54. The client deposited $300 with the attorney, of which $10 had been spent on expenses when the attorney withdrew his representation and claimed the balance in the trust account for his services. *Id.* The trial court granted the defendants' motion to strike the plaintiff's request for punitive damages, concluding that the plaintiff's claim was actually on a contract, not for conversion. *Id.* The court of appeals affirmed, "holding that conversion did not lie, unless there was an obligation to return the identical money." *Id.*

The Missouri Supreme Court reversed. It stated that a claim for conversion will lie "as to funds placed in the custody of another for a specific purpose" if they are "diver[ted] for other than such specified purpose." *Id.* at 55. The court held that because the client had advanced money to the attorney to be held in a trust account for the specific purpose of covering actual litigation expenses incurred, and the attorney diverted those funds for the different purpose of paying his attorneys' fees, the client stated a claim for conversion. *Id.* This was the holding even though the attorney had the authority to withdraw money from the trust account, and the amount converted was commingled with money the attorney rightfully withdrew.[3] Accordingly, even if the holding in *Dwyer* would compel the dismissal of Vogt's conversion claim, which it does not, it is inconsistent with Missouri Supreme Court precedent and must not be followed. *See, e.g., Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 956 (E.D. Mo. 2014) (stating in cases where federal jurisdiction is based on diversity, the court is "bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law," and is not bound by state appellate court decisions) (citing *Owners Insurance Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013)). Instead, this Court is bound by the Missouri Supreme Court's holding in *Dillard v. Payne*, which establishes that Vogt has a valid claim for conversion of money.

Thus, Vogt's claim for conversion of money is well-stated.

## **CONCLUSION**

Plaintiff respectfully requests that this Court grant reconsideration and, upon correction of the manifest error of law identified herein, enter an order denying in its entirely State Farm's motion to dismiss.

---

[3] Notably, the court did not mention the possibility that the ELD could bar the claim even though the parties had a written agreement on the purpose for the funds. *Id.* at 55.

Dated: March 20, 2017                    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Norman E. Siegel*
Patrick J. Stueve            MO Bar # 37682
Norman E. Siegel            MO Bar # 44378
Lindsay Todd Perkins        MO Bar # 60004
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:    816-714-7101
Email:        stueve@stuevesiegel.com
Email:        siegel@stuevesiegel.com
Email:        perkins@stueveseigel.com

- And -

John J. Schirger            MO Bar # 60583
Matthew W. Lytle            MO Bar # 59145
Joseph M. Feierabend        MO Bar # 62563
**MILLER SCHIRGER, LLC**
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:    816-561-6500
Facsimile:    816-561-6501
Email:        jschirger@millerschirger.com
Email:        mlytle@millerschirger.com
Email:        jfeierabend@millerschirger.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ *Norman E. Siegel*
Attorney for Plaintiff