IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL VOGT, | ) | |
| on behalf of himself and all others | ) | |
| similarly situated | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-04170-NKL |
| | ) | |
| STATE FARM LIFE | ) | |
| INSURANCE COMPANY | ) | |
|     Defendant. | ) | |

**ORDER**

Plaintiff Michael Vogt moves for reconsideration of the Court's dismissal of his conversion claim (Count III), Doc. 52. [Doc. 56]. For the following reasons, Vogt's motion is granted, and the Court's dismissal of his conversion claim is vacated.

**I.    Background**

Plaintiff Michael Vogt filed this class action for claims arising out of his life insurance policy with Defendant State Farm Life Insurance Company. Under this policy, State Farm maintains an interest-bearing account in trust for the insured, and this account's value, which is owned by the insured, grows over time. The policy authorizes State Farm to take a monthly deduction from this interest-bearing account, which is to be calculated based on particular factors listed in the policy. However, Vogt alleges that State Farm uses additional, undisclosed factors in its rate calculations, resulting in higher monthly charges than if State Farm relied only on the factors listed in the policy. Vogt brought claims for declaratory relief, conversion, and breach of contract based on State Farm's alleged overcharges to his account.

On February 3, 2017, the Court granted in part State Farm's motion to dismiss with respect to Vogt's conversion claim, concluding that it was barred by Missouri's economic loss doctrine. [Doc. 56]. Vogt now moves this Court under Rule 59(e) or 60(b) to reconsider this dismissal, which he contends was a manifest error of law. Specifically, Vogt argues that this Court overstated the reach of the economic loss doctrine in Missouri, which he argues has never been applied to a claim like his.

**II. Discussion**

A district court has broad discretion in determining whether to grant Rule 59(e) and Rule 60(b) motions. *In re Levaquin Products Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014), and *Innovative Home Health Care, Inc. v. P.T.–O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). However, a motion to reconsider generally "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010).

As stated in the Court's original order, Vogt's claim for conversion requires him to show that "(1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 114 (Mo. Ct. App. 2011). For his conversion claim, Vogt alleges that State Farm deducted unauthorized amounts each month from his account; that he placed money in his account in State Farm's possession for a specific purpose to be applied consistently with the terms of the policy; and that State Farm misappropriated his money by diverting it for its own use contrary to the policy.

### A. The Economic Loss Doctrine

In its motion to dismiss, State Farm argued that Vogt's conversion claim was barred by the economic loss doctrine, which "bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010). Vogt responded by contending that the doctrine did not apply because he had a "possessory right [to the converted funds], independent of [hi]s rights under the contract." [Doc. 22, p. 19 of 22]. After assessing the parties' briefing on the economic loss doctrine, the Court ultimately concluded that the doctrine did bar Vogt's conversion claim because it "[wa]s dependent on his breach of contract claim" and "w[ould] rise or fall based on the Court's interpretation of the policy contract." [Doc. 52, p. 10 (Order on Motion to Dismiss)].

Now, however, Vogt submits extensive briefing in support of reconsideration, within which he cites nineteen additional cases in support of the economic loss doctrine's inapplicability, as well as provides the history and policy rationales behind this doctrine in Missouri. Having reconsidered its decision in light of these new authorities and the parties' substantial briefing on the issue, the Court is persuaded that Missouri's economic loss doctrine does not apply to bar Vogt's conversion claim.

"Missouri's economic loss doctrine grew out of claims of tort which were alleged against builders of homes, or instances where a plaintiff sought to hold a manufacturer or distributor of a product liable in tort, as opposed to a contract action from which a fiduciary duty arose." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 194 (Mo. Ct. App. 2010). The doctrine was derived from negligence and strict-liability cases and was created to preserve the distinction between tort claims sounding in warranty. *See Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978) ("[L]iability imposed for mere deterioration or loss of

bargain resulting from latent structural defects is contractual."); *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.2d 184, 193 (Mo. Ct. App. 2010) ("[T]he common thread running through these cases is the effort to impose tort liability on the builder of a home, or to recover in tort for the failure of a product which is alleged to be defective"); *see also Self v. Equilon Enterprises, LLC*, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005) ("The doctrine was judicially created to protect the integrity of the UCC bargaining process."). The Missouri Supreme Court adopted the doctrine to preserve the distinction between tort and contract where a claim is based on the "loss of [the] bargain." *See Crowder*, 564 S.W.2d at 882 ("[W]here mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of quality . . . [and] [i]n the absence of some express agreement to the contrary, the standard of quality will be presumed to be that of the implied warranty term of reasonable fitness for use.").

To be sure, Missouri courts "have never recognized a mere breach of contract as providing a basis for tort liability." *Khulusi v. Sw. Bell Yellow Pages, Inc.* 916 S.W.2d 227, 230 (Mo. Ct. App. 1995) (citing *American Mortg. Inv. Co. v. Hardin-Stockton Corp*, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984)). This is because "[t]he act, not the breach gives rise to tort liability." *Id.* Therefore, if the act done independently of the contract would result in a tort, and is not dependent on the elements of the contract claim, a tort claim may be asserted alongside a claim for breach of contract. *See id.* Accordingly, Missouri law is clear that a single act can constitute both a breach of contract and a tort without the tort being barred by the economic loss doctrine. *See, e.g., Autry*, 332 S.W.3d at 193 (The mere fact that "the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort" is no bar to recovery).

4

In this case, Vogt's conversion claim arises from the independent duty not to appropriate another's funds, a duty that exists regardless of and independently of Vogt's life insurance contract with State Farm. *See, e.g., Cook v. John Hancock Life Ins. Co.*, 2015 WL 178108 (W.D. Va. Jan 14, 2015) (finding Virginia's economic loss doctrine did not bar plaintiff's conversion claim where "Virginia courts routinely have held that the duty not to convert others' property is a common law duty owed by all, and would exist even in the absence of a contract between the parties"). In other words, State Farm's taking of Vogt's money and the resulting deprivation of Vogt's possessory right to his money would still result in the tortious claim of conversion independently of the parties' contract. Therefore, the mere fact that State Farm's alleged unauthorized deductions from Vogt's account may constitute both a breach of that independent duty and a breach of the contract does not preclude Vogt's tort claim for conversion. *See Davidson v. Hess*, 673 S.W.2d 111, 112-13 (Mo. Ct. App. 1984) ("[T]he action may be one in tort, even though the breach of duty may also be a violation of the terms of the contract."). Put another way, although Vogt's conversion claim may be tied up in and implicated by the Court's interpretation of the policy language, the duty to not convert another's property exists independently of the parties' contractual obligations, and therefore, both claims may proceed.

The Court is cognizant that "courts have indeed at times overstated the scope of the economic loss doctrine by stating it as an absolute rule (and therefore without exceptions) or by referring to tort claims generally (instead of to negligence and strict liability claims)." *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1195 (D. Kan. 2015). Although the Court originally reasoned that Vogt had failed to provide authority showing an *exception* under the economic loss doctrine for a conversion claim like his, the Court's survey of Missouri case law raised in the parties' briefing illustrates that the proper question is, instead, whether there is

5

authority *extending* the doctrine's application to a conversion claim like Vogt's. There is not. In sharp contrast to the few cases cited by the parties in which Missouri's economic loss doctrine did apply, Vogt does not allege claims for product or construction defects, nor does he allege that State Farm negligently performed its contractual duties.[1] *Cf., e.g., Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978) (finding that a subsequent purchaser of a house could not sue the builder to recover the deterioration of the house caused by latent structural defects because the builder had no duty other than its contractual obligations under the theory of the implied warranty of habitability to protect the owners from deterioration). This historically narrowly applied doctrine cannot be broadly expanded to apply to Vogt's conversion claim.

As Vogt correctly points out, Missouri courts have never extended the economic loss doctrine beyond the doctrine's traditional moorings as policing the boundaries between warranty and negligence/strict liability to a claim for conversion. *See, e.g., Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130-31 (Mo. banc 2010) ("Under Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC."); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986) (The economic loss doctrine denies "recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold"). State Farm does not offer any authority to the contrary, nor does it offer authority suggesting that the Missouri Supreme Court would extend the economic loss doctrine beyond these traditional applications. *Cf. Davidson v. Hess*, 673 S.W.2d 111, 113 (Mo. Ct. App. 1984) (finding that in the landlord-tenant context, a tenant who was wrongfully evicted could

---

[1] For this reason, too, the Court rejects State Farm's citation to *Mile Rail, LLC v. Compass Big Blue, LLC*, 2015 WL 492884 (W.D. Mo. Aug. 18, 2015), where the plaintiff was barred from asserting a claim for negligence based on the defendant's failure to remediate pollution on property purchased by the plaintiff pursuant to a contract.

still bring a conversion claim for the landlord keeping her possessions independent of the contract). As to State Farm's brief contention that a conversion claim should be barred in order to preserve the parties' "bargaining relationship," the Court rejects this alleged policy justification as illogical when applied to Vogt's case: Vogt in no way "bargained away" his right to not have his money converted. [Doc. 60, p. 6].

In addition, to find the economic loss doctrine to bar Vogt's conversion claim would effectively abrogate all conversion claims arising from the diversion of funds provided by a plaintiff for one purpose but used by the defendant for another because in such claims, the plaintiff could assert that the defendant breached its contract by using these funds for a different purpose. Missouri courts have found conversion claims where a defendant diverts funds contrary to the plaintiff's instructed purpose for those funds, even where those parties had an express or implied contract setting forth their agreement as to the purpose for the money. *See, e.g., Dayton Construction, Inc. v. Meinhardt*, 882 S.W.2d 206, 209 (Mo. Ct. App. 1994) (finding conversion claim where "[t]he *agreement* of the parties required that Mr. Meinhardt deposit all checks or drafts received as payment for remodeling work into the Dayton joint account" but where he deposited them into a separate account instead) (emphasis added); *Johnson v. GMAC Mortgage Corp.*, 162 S.W.3d 110 (Mo. Ct. App. 2005) (finding conversion claim where plaintiff alleged he made two payments to the defendant mortgage company for the purpose of funding his escrow account and assuring that taxes and insurance were paid but where the defendant failed to credit the money to this account). In such cases, the economic loss doctrine was not even raised as a potential bar to the plaintiffs' claims, further evidencing the doctrine's inapplicability to Vogt's conversion claim.

For the previous reasons, the Court finds that Missouri's economic loss doctrine does not bar Vogt's conversion claim and vacates its prior decision, Doc. 52, on this point. Because the Court found the economic loss doctrine barred this claim in its prior decision, the Court did not need to consider State Farm's separate argument for dismissal of Vogt's conversion claim: that a claim for money does not state a claim for conversion. Therefore, the Court now considers this alternative argument.

### B. Money as Specific Chattel

As a separate argument, State Farm contends that Vogt's conversion claim must be dismissed because it is a claim for money. "[C]onversion generally is not a proper theory where the claim involves money, as opposed to specific chattel." *Johnson v. GMAC Mortg. Corp.*, 162 S.W.3d 110, 125 (Mo. Ct. App. 2005). However, this rule is subject to a narrow exception: "money is the appropriate subject of conversion only when it can be described or identified as a specific chattel." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 415 (Mo. Ct. App. 2000) (quoting *Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d 206, 208 (Mo. Ct. App. 1994)). Accordingly, "[s]pecific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel." *Id.* Although requiring expert testimony, Vogt contends that the unauthorized charges State Farm deducted from Vogt's account can be determined to an identified sum by comparing Vogt's actual charges per month with what the charges should have been. Therefore, the Court looks to Missouri case law for examples of circumstances in which a conversion claim for money is permissible.

In *Brandhorst v. Carondelet Savings and Loan Ass'n*, the plaintiff gave cash to the defendant bank's teller for the purpose of paying off his debt. 625 S.W.2d 696, 698 (Mo. App. 1981). However, after placing these funds into the defendant bank's custody for this specific

8

use, the defendant bank misappropriated them by failing to apply them to his loan, as plaintiff had directed, and instead, converting the funds into money orders. *Id.* The plaintiff did not seek the same currency as if it were a chattel, but instead, he sought an amount in damages equal to the amount he gave to the teller to be put toward his debt. *Id.* The plaintiff also did not try to reclaim a specific representation of money, like a check or certificate of deposit. *Id.* The court held that although conversion does not customarily lie for money represented by a general debt, these facts supported a conversion claim because plaintiff had placed the funds in another's custody for a definite application, and they were not used for that purpose. *Id.*

Similar to *Brandhorst*, Vogt entrusted State Farm with funds (in the form of premiums), which were designated for the specific purpose of being maintained in his account accumulating interest over time on his behalf. Vogt gave these funds to State Farm for this specific use and to pay the deducted charges discussed previously. However, Vogt contends State Farm diverted funds from his account for its own purposes by withdrawing sums larger than the charges permitted under the policy. As in *Brandhorst*, these facts support a conversion claim because Vogt placed funds in State Farm's custody for a definite application, and they were not used for that purpose.

State Farm further argues that as a claim for money, Vogt's conversion claim must be dismissed because it is not for "a specific sum, identifiable at the time of suit." [Doc. 26, p. 8]. However, the Court is unaware of authority holding that a conversion claim for money that can be "described or identified as specific chattel" will not stand when the specific numeric sum is not identifiable at the time of filing, particularly when the specific sum presumably, will be identifiable as litigation progresses. *See Dayton Const. v. Meinhardt*, 882 S.W.2d 206, 209 (Mo.

Ct. App. 1994) (finding plaintiff stated claim for conversion where the allegedly converted checks were specifically identified *at trial*).

In *Reason v. Payne*, the Missouri Court of Appeals permitted a claim for conversion of a savings account, despite defendants' argument that the savings account was not a specific chattel. 793 S.W.2d 471 (Mo. Ct. App. 1990). In finding that the account could properly be the subject of a conversion suit, the court noted other states' cases, which recognized savings accounts could be the subject of a conversion claim if the money could be specifically described or identified. *Id.* at 475. The court noted that the accumulation of interest was the only real deposit into the account; no withdrawals were made; and the account was never commingled with any other funds. *Id.* Despite being a claim for money, the court ultimately determined that the savings account funds were sufficiently specific and identifiable to support a conversion claim. *Id.*

As in *Reason*, Vogt's claim for State Farm's misappropriated account deductions are identifiable as specific chattel by comparing what State Farm deducted as charges every month with what State Farm was authorized to deduct as charges every month. Vogt does not allege vague monetary claims. Rather, the funds he seeks are specific and identifiable, making them appropriate for a claim of conversion.

In its opposition to Vogt's motion to reconsider, State Farm attempts to bolster its argument for dismissal by relying on two additional cases not raised in its original motion to dismiss: *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215-16 (8th Cir. 1992) and *Dwyer v. Unit Power, Inc.*, 965 S.W.2d 301 (Mo. Ct. App. 1998). However, these cases are also distinguishable and do not preclude Vogt's conversion claim.

State Farm cites *Allison v. Security Benefit Life Ins. Co.* as an example of "the Eighth Circuit specifically reject[ing] a group of plaintiffs' 'elaborate attempt to convert their on-going contract disputes' with life insurance companies 'into a tort action.'" [Doc. 60, p. 7 (citing *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215-16 (8th Cir. 1992))]. In *Allison*, the district court dismissed the diversity action against SBL, the defendant life insurance company, for lack of subject matter jurisdiction because each plaintiff's amount in controversy was less than the requisite jurisdictional amount. *Id.* at 1214. On appeal, the Eighth Circuit reviewed the dismissal and found that "[d]espite plaintiffs' elaborate attempt to convert their on-going contract disputes with SBL into a tort action, their allegations fail[ed] to meet the Arkansas standard for punitive damages." *Id.* at 1216.

Specifically as to the *Allison* plaintiffs' conversion claim and the associated claim for punitive damages, the "plaintiffs allege[d] that SBL committed the tort of conversion by persistently failing to pay over funds allegedly owed under the policies 'through SBL's wrongful interpretation of the contracts.'" *Id.* The Eighth Circuit held, "Even if the refusal to pay funds could constitute the exercise of dominion over plaintiffs' property, which we doubt in these circumstances, SBL's refusal to pay under an *erroneous belief* that it had a legal right to do so is not an intentional conversion for which punitive damages may be recovered." *Id.* at 1216 (emphasis added).

However, *Allison* is distinguishable from Vogt's case. Unlike in *Allison*, this Court has not been tasked with reviewing Vogt's entitlement to punitive damages. Furthermore, in contrast to the *Allison* plaintiffs' complaint, which alleged the defendant insurance company's "erroneous belief" that it had a legal right to refuse to pay over funds under the policies, Vogt's Complaint does not allege that State Farm believed it was acting consistently with its legal rights when it

11

converted his funds. *Compare* Vogt's Complaint alleging "Defendant intended to cause damage to the Plaintiff . . . by deducting more than it was authorized to deduct" *with Allison*, 980 F.2d at 1216 (where complaint alleged that the insurance company failed to pay over funds "through its wrongful interpretation of the contract[]"). Therefore, at least at the present motion to dismiss stage, Vogt has plausibly stated a claim for conversion by alleging that State Farm "intended to cause damage" through its unauthorized deductions and was "malicious" toward the insureds through those deductions. [Doc. 1, p. 13, ¶ 72 (Complaint)].

As to State Farm's citation to *Dwyer*, the Court rejects State Farm's reliance on this case for the proposition that a general claim for money is not a claim for conversion where the defendant is "authorized to draw on" the account at issue. 965 S.W.2d 301, 305-307 (Mo. Ct. App. 1998). In *Dwyer*, the Missouri Court of Appeals held that a corporation could not state a claim for conversion against officers of a company that withdrew money from the corporation's accounts where "the evidence indicated that the property allegedly converted was, at best, money held for general corporate purposes" and that each officer was authorized to draw on these accounts. *Id.* at 306. In contrast to the funds in *Dwyer*, however, the allegedly converted funds in Vogt's case were not held for "general corporate purposes" but instead were held in trust *for Vogt*.

Furthermore, even to the extent that *Dwyer*'s holding could be read to preclude Vogt's conversion claim because of State Farm's authority to deduct a monthly charge from Vogt's account, this Missouri Court of Appeals decision conflicts with Missouri Supreme Court precedent in *Dillard v. Payne*, 615 S.W.2d 53 (Mo. 1981). In *Dillard*, a former client sued his attorney for expenses in connection with a contemplated lawsuit. *Id.* at 54. The client deposited $300 with the attorney, of which $10 had been spent on expenses when the attorney withdrew his

representation and claimed the balance in the trust account for his services. *Id.* The Missouri Supreme Court reversed the appellate court's holding that "conversion did not lie, unless there was an obligation to return the identical money." *Id.* The Missouri Supreme Court held instead that a claim for conversion will lie "as to funds placed in the custody of another for a specific purpose" if they are "diver[ted] for other than such specified purpose." *Id.* at 55. The court reasoned that because the client had advanced money to the attorney to be held in a trust account for the specific purpose of covering actual litigation expenses incurred, and the attorney diverted those funds for the different purpose of paying his attorneys' fees, the client stated a claim for conversion. *Id.* By finding the plaintiff stated a conversion claim, despite the attorney's clear authority to withdraw money from the trust account and despite the fact that the amount converted was commingled with money the attorney rightfully withdrew, the Missouri Supreme Court's *Dillard* opinion conflicts with the Missouri Court of Appeals opinion in *Dwyer*. Accordingly, the Court is not persuaded that State Farm's authority to deduct charges from Vogt's account precludes his conversion claim.

For the previous reasons, the Court finds that Vogt has stated a claim for conversion.

III. **Conclusion**

Plaintiff Vogt's Motion to Reconsider, Doc. 56, is granted. The Court's dismissal of Count III for conversion is vacated.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 26, 2017
Jefferson City, Missouri

13