**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

MICHAEL VOGT,
on behalf of himself and all others
similarly situated,

       Plaintiff,

  v.

STATE FARM LIFE
INSURANCE COMPANY,

       Defendant.

No. 2:16-cv-04170-NKL

**ORDER**

Plaintiff Michael Vogt claims that defendant State Farm Life Insurance Company's deduction of certain charges from policy owners' "Account Values" was not authorized by the terms of Vogt's policy. State Farm moves for summary judgment on all of Vogt's claims. Doc. 166. For the reasons discussed below, Defendant's motion for summary judgment is denied.

**I.   UNDISPUTED FACTS**

In 1999, Vogt purchased policy form 94030, a flexible premium adjustable whole life insurance policy, from State Farm. Doc. 200, Statement of Facts ("SOF"), at I, ¶ 1. Unlike standard term life insurance policies, this type of policy provides an investment, savings, or interest-bearing component in addition to the usual death benefit. Under this policy, State Farm maintains an interest-bearing account for the insured, and this account's value, which is owned by the insured, grows over time.

Each month, State Farm was permitted to make a deduction from the Policy that included "(1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense

charge." *Id.* The monthly expense charge was $5.00. Doc. 200, SOF, at II, ¶ 4. With respect to

the COI, the policy states:

> Cost of Insurance. This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount.
>
> > The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> >
> > > (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> > >
> > > (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
>
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

*Id.*, at II-III, ¶ 5.

> In a section entitled "Guaranteed Values Provisions," the Policy states:
>
> The guaranteed values and maximum cost of insurance rates are based on the Insured's age last birthday and sex. The interest rate is 4% a year. The Commissioners 1980 Standard Ordinary Mortality Table is used. Modifications are made for rate classes other than standard.

*Id.*, at III, ¶ 6. The same section also provides:

> **Monthly Cost of Insurance Rates.** These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

*Id.*, ¶ 7. Expenses and profits are not mentioned in the "Monthly Cost of Insurance Rates"

provision. *Id.*, at XV, ¶ 33.

The maximum COI rates used to determine guaranteed values for standard health rate classes were 98% of each rate listed in the 1980 Commissioners Standard Ordinary mortality tables, which is on an attained age basis. *Id.*, at IV, ¶ 8; *id.* at XIV-XV, ¶ 32. The maximum rate tables are sorted by attained age, sex, and rate class, such that the maximum rate in the table applicable to any particular Policyholder in a standard health rate class is based on the Policyholder's age and sex. *Id.*, ¶ 10. The Policy shows that the "Maximum Monthly Cost of Insurance Rates" increase as the Insured's age increases and double in less than 10 years. *Id.*, at XIII, ¶ 30.

There are differences in the mortality expectations associated with policyholders based on the number of years that elapsed since they applied for the policy. *Id.* at XIV-XV, ¶ 32. Age, sex and rating class are factors used to differentiate policyholders in developing mortality tables. *Id.* The parties agree that expenses and profits are not mortality factors, meaning that they do not bear on the life expectancy of an insured. *Id.*, at XIX, ¶ 37.

State Farm developed mortality tables using proprietary data reflecting its mortality experience with its own insureds, including the 88-91 SFL and 93-97 SFL mortality tables. *Id.*, at VI-VII, ¶ 12. The COI rates were not equal to the mortality rates in its proprietary mortality tables. *Id.* ████████████████████████████████████████

████████████████████████████████████████

████████████████████████ *Id.*, at VIII, ¶ 14.

State Farm modifies the COI rates for rate classes other than the standard rate class. *Id.*, ¶ 16. State Farm created a separate substandard rate table for insureds with certain health conditions. *Id.*, ¶ 17. Vogt was assigned to the Table 4 Rate Class based on his health conditions. *Id.*, at IX, ¶ 18. At all times, the COI rates actually used for Vogt have been less

than the maximum COI rates disclosed on page 4 of the Policy. *Id.*, ¶ 19. Since the issuance of Vogt's Policy, State Farm never increased the current COI rate schedule used to determine Vogt's COI deduction. *Id.*, ¶ 20. In fact, in 2002, State Farm elected to reduce COI Rates for insureds at most attained ages in the COI Rates scales. *Id.*, ¶ 21.

State Farm had the option to "defer paying [Vogt] a withdrawal for up to 6 months" after a request for such. *Id.*, at X-XI, ¶ 24. If Vogt chose to surrender his Policy, State Farm could likewise "defer paying [him] the cash surrender value for up to 6 months after receiving [his] request." *Id.*

Although Vogt did not personally consult an actuarial expert in 2016, his counsel consulted with an actuarial expert on his behalf. *Id.*, at XI, ¶ 26. Between the time that Vogt surrendered his Policy in 2013 and the point at which he consulted counsel in 2016, he received no new information that led to discovery of his claim against State Farm. *Id.*, at XIII, ¶ 29. State Farm does not deny that it did not disclose to policy owners the assumptions underlying the current COI rates. *Id.*, at XII, ¶ 27, and at XXII, ¶¶ 43-44. There is no dispute that a policyholder without knowledge, experience or training likely would not be able to understand, without assistance, how State Farm determined whether to set COI rates below the maximum rates identified in the Policy, and how much such rates should be. *Id.*, at XXIII, ¶ 45.

## II.  **STANDARD**

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must resolve all conflicts of evidence in favor of the nonmoving party. *Mirax Chem. Prod. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). However, the Court must enter summary judgment "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

### a.    Whether the COI Rates State Farm Charged Violated the Policy

The parties' dispute revolves around the following provision of the Policy:

**Monthly Cost of Insurance Rates.** These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Doc. 167-2 (Policy), at 10.

The Court must interpret this provision in accordance with the general rules of contract construction. *Todd v. Missouri United School Insurance Council*, 223 S.W.3d 156, 160 (Mo. banc 2007).  The Court must try "to give each provision a reasonable meaning" and to avoid interpretations that "render[] some provisions useless or redundant."  However, the Court also must give the Policy's terms their ordinary meaning, that is, "the meaning that the average layperson would reasonably understand."  *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997).

Vogt's position is premised on the following language:  "**Monthly Cost of Insurance Rates.** These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class.  . . .  Such rates can be adjusted for projected changes in mortality

but cannot exceed the maximum monthly cost of insurance rates."  Vogt argues that the specified factors—age, sex and applicable rate class, adjusted for projected change in mortality—are the only factors that may be considered in setting the cost of insurance rate.  State Farm contends that "based on" does not mean exclusively founded upon but instead permits State Farm to add factors such as State Farm's profits and expenses to calculate the monthly cost of insurance rates.

In *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1152 (7th Cir. 2013), the only federal appellate decision directly on point, the Seventh Circuit defined the word "base" as "the principal ingredient, the fundamental element," but not the exclusive element.  *Norem* explains its logic through an analogy:  "no one would suppose that a cake recipe 'based on' flour, sugar, and eggs must be limited only to those ingredients."

However, as the Southern District of New York subsequently observed, "recipes are exhaustive lists of all the ingredients needed" to make something—and while "[h]ighly experienced chefs might be able to play with recipes, . . . the average home cook (the person analogous to the average insured under [state] law) follows them slavishly, without adding other, undisclosed ingredients."  *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 472 (S.D.N.Y. 2014).

Other courts considering similar language also have held that it imposes an obligation on the insurer to determine COI rates in accordance with the enumerated factors.  *See Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 973-74 (S.D. Iowa 2001) (holding, where language stated that "[t]he Cost of Insurance Rate is based on the sex, attained age and rate class of the Insured," that "the plain language of the policies appears to provide no basis for increases in the cost of insurance other than increases due to expectations of future mortality"); *rev'd in part on other grounds*, 300 F.3d 938 (8th Cir. 2002) (noting that the appellant did not challenge the

district court's conclusion "that ALLIED breached the universal life policies by imposing the two percent COI fee increase because the policies provide that COI fees will be determined 'based on [ALLIED's] expectations as to future mortality experience'"); *Dean v. United Omaha Life Ins. Co.*, No. 05-6067, 2007 WL 7079558, at *4 (C.D. Cal. Aug. 27, 2007) (concluding that "'based on' is best understood here as simply indicating that a calculation will be performed using the listed factors—not that the COI charge will be determined using additional, unmentioned factors"); *see also Alleman v. State Farm Life Ins. Co.*, 334 Fed. Appx. 470, 472 (3d Cir. 2009) (holding that State Farm policies stating that values were "based on the Insured's age last birthday and sex" unambiguously meant that age and sex were the only mortality factors relevant to the rate); Brief of Defendant-Appellee, at 44-45, *Alleman v. State Farm Life Ins. Co.*, No. 07-4283 (3d Cir. Aug. 14, 2008) (State Farm arguing that "Plaintiff cannot point to a single statement in the policies . . . that promises to base the premium amount on" factors other than those specifically contained therein, and that, "to the extent the policy contracts themselves mention factors that may affect policy benefits, they mention age and sex," and therefore, a "reasonable person could not construe the language of the policy contracts as promising to take [an unspecified factor] into account in setting premium amounts").

Both the Missouri Supreme Court and the Eighth Circuit have used the phrase "based on" in describing an exhaustive list of factors. *See, e.g., Seaboldt v. Universal Underwriters Ins. Co.*, 384 F. App'x 536, 538 (8th Cir. 2010) ("Only if ambiguities exist—such as duplicity, indistinctness, or uncertainty as to a provision's meaning—that leave the policy open to different constructions do Missouri courts interpret a policy *based on* the way a lay person would understand it.") (emphasis added); *Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 97 (Mo. 2012) ("*Based on* the plain meaning of the word 'furnish' and concerns about the

interplay between 'temporary worker' exceptions in commercial liability policies and workers' compensation acts, a number of courts also have concluded that a third party must have some ability to direct the actions of a person in order to 'furnish' him or her to an employer.") (emphasis added).

It is true that the phrase "based on" can be used by a cookbook author to describe the generic foundation of a cake, as found by the Seventh Circuit in *Norem*. But as explained in *Fleisher,* a recipe lists the ingredients for a specific cake; in that context, a reasonable lay person would not expect that they could achieve the same cake by using different or additional ingredients. In other words, "based on" is not always used to describe only the foundation of a thing. Frequently it is used to identify a specific thing from which something else is developed, achieved, or described; a specific recipe would be an example. Similarly, "jurisdiction based on diversity" means that jurisdiction is achieved by diversity or described as consisting of diversity. "Based on" in that particular case would not suggest that diversity is but one of many potential ways to establish subject matter jurisdiction. A request for a new trial based on an error in jury instruction 3 does not suggest that the new trial was also requested for a defect in jury instruction 4 or was an open-ended request for a new trial that would preserve all possible grounds on appeal.

Given the COI language in the Vogt policy and its context in the policy as a whole, the Court believes that no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance. While an insurance company would be expected to make a profit , the terms of the insurance policy at issue are so dense, a lay person would not understand that State Farm expected to derive profit from the COI.

At a minimum, there is an ambiguity, and under Missouri law, it must be construed against the insurance company. *See, e.g., Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009) ("In construing the terms of an insurance policy, this Court . . . resolves ambiguities in favor of the insured."). This is because the insurance company wrote the policy and had the opportunity and necessary understanding to make clear to the insured how the COI would be calculated. *See Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210–11 (Mo. banc 1992).

Furthermore, *Norem* is distinguishable, as the Policy here contains language that the *Norem* court found to be missing in the policy it considered. *Compare Norem*, 737 F.3d at 1154 (noting that the COI provision in the policy before it "says nothing about 'mortality experience' as the basis for the COI rate") *with* 167-2 (Policy), at 10 (stating that the rates charged "can be adjusted for projected changes in mortality").

State Farm's argument that construing "based on" as suggesting exclusivity in effect adds a term not found in the Policy. Nowhere does the Policy state that the listed considerations are the only factors on which the COI rate may be based. Yet, State Farm's interpretation requires reading terms not found in the provision—"among other things" or "such factors as"—into the Policy. Vogt's interpretation, on the other hand, is supported by the basic rule of contract construction that *expressio unius est exclusio alterius*.

State Farm points out that "[i]t is impossible to generate a COI rate by using *only* an individual's sex, age and rating class"—some sort of "'mathematical formula or underlying data or assumptions'" is required. Doc. 167, at 12 (quoting *Norem*, 737 F.3d at 1152). Implicit in this argument is the assumption that the phrase "based on" does not contemplate any kind of

calculation.  But,

> "based on" is best understood here as simply indicating that a calculation will be performed using the listed factors—not that the COI charge will be determined using additional, unmentioned factors.  [The insurer] obviously uses some computation to derive the cost of insurance charge from the age, sex, rate and risk classes, the current specified amount, and the length of time the policy has been in force.

*Dean*, 2007 WL 7079558, at *5 ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████     Thus, it is possible to calculate the COI rate based exclusively on the specified factors.

State Farm next points out that, "[a]lthough data regarding 'mortality expectations' are among the categories of information routinely used in determining life insurance rates, no such data is mentioned in the sentence upon which Plaintiff relies."  While this is true, it ignores the fact that, in the same "Monthly Cost of Insurance Rates" paragraph, the Policy notes that the rates can be "adjusted for projected changes in mortality . . . ."  Doc. 167-2, at 10 ("We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates.").  Thus, the Policy expressly recognizes mortality considerations as a factor in setting the COI rates.

State Farm also argues that, because the language concerning the COI rates is contained within the "Guaranteed Values Provisions" section of the Policy, it applies only to the guaranteed maximum COI rates, and not the actual COI rates State Farm charges, which are not fixed.  But to interpret this language as applying only to maximum COI rates, rather than the current COI rate, would render the language meaningless.  "These rates" refers to the preceding

phrase, "Monthly Cost of Insurance Rates." Had this particular sentence concerned maximum COI rates, as State Farm argues, it would have expressly said so—as the Policy does, for example, just two sentences later. *See* Doc. 167-2, at 10 ("The rates shown on page 4 are the *maximum monthly cost of insurance rates* for the Initial Basic Amount. *Maximum monthly cost of insurance rates* will be provided for each increase in the Basic Amount. Such rates can be adjusted for projected changes in mortality but cannot exceed the *maximum monthly cost of insurance rates*.") (emphases added). The Guaranteed Values Provisions section also appears to distinguish between "guaranteed values" and "maximum cost of insurance rates." *See* Doc. 167-2, at 11 ("The guaranteed values and maximum cost of insurance rates are based on the Insured's age last birthday and sex."). Had maximum cost of insurance rates been subsumed within the category of "guaranteed values," as State Farm now argues, the Policy would not have mentioned both separately in this sentence.[1]

State Farm also argues that Vogt's interpretation of the provisions concerning COI rates requires State Farm to use proprietary mortality data, rather than just the 1980 Commissioner Standard Ordinary mortality tables (the "1980 CSO Tables") identified in the Policy, to set COI rates. State Farm argues that, because State Farm did not exceed the maximum COI rates, Plaintiff's theory invents out of thin air an obligation to use proprietary mortality data, rather than the 1980 CSO Tables expressly mentioned in the Policy, to set the COI charge.

However, this argument fails to explain why the provision in dispute is titled, "Monthly Cost of Insurance Rates"—and not *maximum* monthly cost of insurance rates. The Policy

---

[1] State Farm insists that "the only plausible reading of the sentence at issue is that age, sex and rate class are the only *individual-specific* factors used to place Policyholders into different risk groups, not that age, sex and rate class are the only factors that State Farm may use to determine COI rates." *Id.*, at 13. But the sentence does not even mention risk groups. To the contrary, it mentions only "[t]hese rates for each Policy year," referring to the "Monthly Cost of Insurance Rates" subheading, and the specified factors that form the "bas[is]" thereof.

expressly states that State Farm may charge a rate lower than the maximum monthly COI rate, and indeed, State Farm did not always charge the maximum cost of insurance rate. In specifying that it would not always charge the maximum COI rate, but that it nonetheless would "base[]" the "Monthly Cost of Insurance Rates" on "the Insured's age on the Policy anniversary, sex, and the applicable rate class," State Farm did not suggest to a reasonable person that only the 1980 CSO Tables would be used.

Furthermore, "maximum cost of insurance rates" are defined in the Policy as being "based on" a more limited range of factors than the monthly COI rates. *Compare* Doc. 167-2, at 11 ("The guaranteed values and maximum cost of insurance rates are based on the Insured's age last birthday and sex."), *with id.*, at 10 (stating that monthly COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class"). Both "policy year" and "policy anniversary" are "measured from the policy date," the "effective date of th[e] policy." Doc. 167-2, at 5 ("A policy month, year, or anniversary is measured from the policy date"); *id.* (defining "Policy Date as "[t]he effective date of this policy."). By referencing both the "policy year" and the "policy anniversary" in describing the monthly COI rates, the Policy incorporates the duration of the policy as a factor affecting those rates. In contrast, the Policy does not incorporate a duration factor in describing the maximum COI rates, and the 1980 CSO Tables do not consider policy year. For this reason, State Farm's use of the 1980 CSO Tables cannot satisfy the requirement that the monthly COI rates be based on "the Insured's age on the policy anniversary, sex, and applicable rate class" "for each policy year . . . ."

Finally, State Farm argues that the language "[w]e can charge rates lower than those shown" permits, but does not require, State Farm to charge rates below the maximum monthly COI rates. While this language by itself does not require State Farm to determine the COI

charge in any particular way, it does nothing to limit the obligations that the other language in the COI provision—discussed above—imposes on State Farm.

### b. <u>Whether Vogt's Claims Are Time-Barred</u>

State Farm also renews the statute-of-limitations argument it made in moving to dismiss the complaint for failure to state a claim, insisting that the record before the Court "directly contradicts important factual assumptions underlying the Court's denial of the Rule 12(b)(6) motion . . . ." Doc. 167, at 15.

Under Missouri law, a five-year statute of limitations applies to claims for breach of contract, conversion, and requests for declaratory judgment, and the statute begins to run at the time when the action accrues. Mo. Rev. Stat. §§ 516.120(1), (2), and (4). The cause of action is deemed to accrue not when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment, and, if there is more than one item of damage, then, when the last item of damage is sustained and capable of ascertainment, so that all resulting damage may be recovered, and full and complete relief may be obtained. Mo. Rev. Stat. § 516.100. Thus, "the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action." *Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57 (Mo. banc. 1985) (citing *Anderson v. Griffin, Taylor, Penner & Lay, P.C.*, 684 S.W.2d 858 (Mo. App. 1984)). Rather, "the statute of limitations begins to run when the 'evidence was such [as] to place a reasonably prudent person on notice of a potentially actionable injury.'" *Powel v. Chaminade Coll. Prep., Inc.*, 197 S.W.3d 576, 582 (Mo. 2006). The Court therefore must apply an objective standard in determining when the statute of limitations began to run in this case. *See id.*

In his complaint, Vogt alleged that only after he consulted with an actuary in 2016 did he learn that he was being overcharged for the Policy. In his deposition, Vogt admitted that he had never personally consulted with an actuarial expert, and that he had been concerned for some time that cost of insurance rates were "going up and up" each year and believed that he was being overcharged. State Farm insists that these admissions are fatal to Vogt's claims.

Although Vogt himself did not consult with an actuarial expert, his counsel consulted an actuarial expert on his behalf in 2016, and Vogt supposedly thereby discovered the alleged overcharges. Doc. 191-1, ¶ 2.[2] The fact that Vogt himself did not consult with the actuarial expert does not suggest that he found out about his claim prior to May 2016.

Vogt also argues that his dissatisfaction with State Farm's charges concerned the increasing premiums, and his "use of 'rates' regarding the 'cost of insurance' were a laymen's description of his general discontent with the overall cost of the policy." Doc. 191-2, ¶ 5. Vogt further argues that, in any event, "Vogt could not have known State Farm was overcharging him for the COI in breach of the Policy, because "State Farm did not disclose COI Rates to policyholders at all," and even if it had, "policyholders could not have known those rates included undisclosed factors." Doc. 191, at 28-29. The mere fact that COI charges were increasing also could not have "tipped" Vogt off to the alleged overcharges, because COI charges increase as the insured ages, because of mortality expectations. Therefore,

---

[2] It is common practice for attorneys to retain and consult with experts on behalf of their clients. Indeed, this is why the attorney-client privilege extends to counsel's communications with consulting experts. *See, e.g., State ex rel. Crown Power & Equip. Co. v. Ravens*, 309 S.W.3d 798, 809 (Mo. 2009) ("A consulting expert collaborates with counsel on trial strategy; the work product protection serves to incentivize and reward diligent trial preparation and free communication between counsel and his consultant."). Because Vogt's counsel are his representatives, their actions can be ascribed to Vogt himself.

dissatisfaction with increasing rates would not, as a matter of law, have put Vogt on notice that State Farm was breaching its contract through its calculation of the COI rate.

In ruling at the motion-to-dismiss stage that Vogt's claims could proceed, the Court relied on a case that State Farm now seeks to distinguish, *Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57 (Mo. 1985). In *Martin*, where a land-surveying company prepared an inaccurate survey, the court held that the plaintiffs were not required to "double check" the accuracy of the survey, and the plaintiffs' cause of action did not accrue before a boundary dispute with a neighbor gave cause for the plaintiffs to inquire, eight years after the survey, if the survey had been accurate. *Id.* at 64–65. As this Court previously held, "[u]nlike the surveying defect in Martin, the improper rate and charge calculations alleged by Vogt were not ascertainable by mere visual inspection or asking a neighbor. Instead, they were only ascertainable with knowledge of the actuarial information used in State Farm's calculations, information that Vogt did not have. Just as the Martin plaintiffs relied on surveying experts, Vogt similarly relied on State Farm's experts who administered his insurance policy." Doc. 52, at 7.

State Farm argues that here, unlike in *Martin*, there was no "triggering event, like the boundary dispute," to explain why Vogt chose to investigate the COI calculation when he did. According to State Farm, "[w]hat Plaintiff ultimately elected to do in 2016—consult an attorney and bring suit—he could have done within the five year limitations period after he began to believe he was overcharged." But the operative question is whether a reasonably prudent person would have been on notice of a potentially actionable injury given the information in the record. The fact that someone made an inquiry to find out what was causing the cost of insurance to escalate is not affirmative evidence that they were on notice before that time that the COI calculation violated the terms of the Policy.

The statute of limitations is an affirmative defense and State Farm bears the burden of proof on that defense. The fact that someone eventually became sufficiently fed up with increasing costs to consult an attorney is not evidence that they had an obligation, as a matter of law, to investigate the monthly COI sooner.[3]

### c.  Whether the Conversion Claim Should Be Dismissed Because State Farm Was Authorized to Make Monthly Deductions

State Farm seeks reversal of the Court's decision reinstating the conversion claim it previously dismissed (Doc. 71), arguing that, "[c]ontrary to this Court's holding in its order reconsidering the motion to dismiss, the funds in the account value are not 'held in trust for [Vogt],'" but instead, "are held for the specified purpose of making deductions necessary to keep the Policy in force."  Doc. 167, at 19 (quoting Doc. 71, at 12).  State Farm's position is that, because it was authorized to deduct a COI charge, no conversion claim can lie against it, regardless of whether the COI charge deducted should have been lower.  Doc. 200, at 10.

In Missouri, a conversion claim may lie against a person who deducts money from a particular sum of money for an unauthorized purpose, even if he was authorized to make deductions from that money for other purposes.  *See Dillard v. Payne*, 615 S.W.2d 53 (Mo. 1981) (holding that lawyer who deducted money from trust account to pay his own fees may be liable for conversion, despite the fact that he was authorized to deduct money from the account for litigation expenses).  Here, State Farm was authorized to make deductions for, *inter alia*, COI charges, which were to be "based on the Insured's age on the Policy anniversary, sex, and

---

[3] To the extent that State Farm argues that the Policy put Vogt on notice that the COI rates could be based on any factors, so long as the rates did not exceed the maximum COI rates, the Court rejects the argument for the reasons stated in the foregoing section.

applicable rate class."[4]  To the extent that State Farm deducted money for purported COI charges that in fact were not expressly authorized by the Policy, it diverted for an unauthorized purpose funds that were placed in its custody for a different purpose, and it can be held liable for conversion.

### d.  Whether the Conversion Claim Should Be Dismissed Because Vogt Did Not Have an Immediate Right to Possess the Funds

State Farm had the contractual right to "defer paying [Vogt] a withdrawal [or the cash surrender value] for up to six months" after receiving a request.  Doc. 200 (SOF), at X-XI, ¶ 24. State Farm therefore argues that Vogt did not have an immediate right to possession of the funds in the account value—an element critical to conversion.  Doc. 167, at 19 (citing *Emerick v. Mut. Ben. Life Ins. Co.*, 756 S.W.2d 513, 526 (Mo. 1988)).

In *Emerick*, a general agent of an insurance company was contractually entitled to commissions on policies sold through the insurance agency during his tenure, but "his right to possession" of the commissions "was not realized until the due date."  *Id.* at 525-26.  Because the agent "failed to show he had an immediate right to possession of the renewal commissions at the time of the alleged conversion," the Missouri Supreme Court concluded that the conversion count should not have been submitted to the jury.

As a preliminary matter, *Emerick* is distinguishable from the instant case.  Whereas the agent in *Emerick* could not have been said to have a right to the commissions until he was due to receive them, here, the account value funds belonged to Vogt at all times.  The mere fact that State Farm might have made him wait "up to six months" did not strip him of his rights to the funds.

---

[4] State Farm's argument that its deductions were authorized by the Policy is rejected for the reasons set forth in Section A, *supra*.

Moreover, *Emerick* noted that "[a] plaintiff charging conversion must show *possession or the right to possession*, or an ownership which carries with it the right to immediate possession." "The phrase 'right to possession' has been construed to mean right to immediate possession at time of conversion or when suit was brought." *Williams v. Blumer*, 763 S.W.2d 242, 246 (Mo. Ct. App. 1988) (citation omitted). Here, Vogt indisputably had a right to immediate possession of the funds in his account after the six-month period elapsed, years before he brought this action. State Farm has taken and not returned those portions of the COI charge that were not authorized by the Policy. Thus, State Farm has failed to establish a basis for dismissal of Vogt's conversion claim.

## III.    Conclusion

For the foregoing reasons, State Farm's motion for summary judgment is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 10, 2018
Jefferson City, Missouri