IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MICHAEL VOGT,
on behalf of himself and all others
similarly situated,

      Plaintiff,

      v.

STATE FARM LIFE
INSURANCE COMPANY,

      Defendant.

No. 2:16-cv-04170-NKL

## ORDER

Plaintiff Michael Vogt moves for an order certifying a class of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Missouri."[1] Doc. 145. For the reasons discussed below, the Court grants Plaintiff's motion.

**I. BACKGROUND**

In 1999, Vogt purchased policy form 94030 (the "Policy"), a flexible premium adjustable whole life insurance policy, from State Farm. The Policy was a universal life insurance policy, a type of "permanent" life insurance that, unlike standard term insurance, is supposed to provide lifetime death benefit protection. Policy owners paid premiums that were deposited into their "Account Value," which accumulated interest at or above a minimum rate that the Policy guarantees.

---

[1] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family (collectively, the "Excluded Persons").

Each month, State Farm was permitted to make a deduction from the Policy that included "(1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." The Policy remained in force so long as there was sufficient money in the Account Value to cover these monthly deductions.

The cost of insurance ("COI") charge was calculated using a monthly cost of insurance rate. The Policy provides that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "can be adjusted for projected changes in mortality." Doc. 145-1, at 10. These factors are commonly used to determine mortality expectations for an insured or group of insureds. However, Plaintiff contends that State Farm in fact uses other, unauthorized factors, having nothing to do with mortality expectations, in determining the Policy's COI rates, and that State Farm thereby deducts COI charges from Account Values in amounts exceeding those authorized by the Policy. ███

███

███ Doc. 150-3, at 3; Doc. 150-4, at 5.

The Policy sets the monthly expense charge at $5.00. However, Vogt contends that, by including unauthorized expenses in the Policy's COI rates, State Farm deducts more than $5.00 in expense charges, breaching the expense charge provision.

State Farm does not deny that it did not disclose to policy owners the assumptions underlying the current COI rates. Doc. 199 (Defendant's Reply in Support of Its Motion For Summary Judgment Motion, State Farm's Response to Plaintiff's Statement of Additional Facts), at XII, ¶ 27, and at XXII, ¶¶ 43-44. There is no dispute that a policyholder without knowledge, experience, or training likely would not be able to understand, without assistance, how State

2

Farm determined whether to set COI rates below the maximum rates identified in the Policy, and how much such rates should be.  *Id.*, at XXIII, ¶ 45.

The Policy is a fully integrated contract, and its language is materially the same for all members of the putative class.  Doc. 145-1, at 11.  Neither State Farm's nor the Policy-holder's obligations can be obviated by informal consent or waiver because "[o]nly an officer has the right to change th[e] [P]olicy," and "[n]o agent has the authority to change the [P]olicy or to waive any of its terms."  *Id.*  The allegedly unauthorized charges result from the uniform application of the Policy's terms.  All policy owners are subject to the same set of COI rates, and all COI rates are calculated using the same undisclosed factors.  *Id.*

Vogt brings four claims:  two claims for breach of contract, specifically with regard to the COI charges (Count I) and the expense charges (Count II), a claim for conversion with respect to the Account Value (Count III), and a claim for declaratory relief relating to the alleged breaches of the Policy provisions concerning COI and expense charges (Count IV).  The class Vogt seeks to certify consists, with the exception of the Excluded Persons, of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Missouri."

The Court previously denied State Farm's motion for summary judgment.  Doc. 218.

## II. <u>DISCUSSION</u>

Under Federal Rule of Civil Procedure 23, a motion for class certification involves a two-part analysis.  First, under Rule 23(a), the proposed class must satisfy the requirements of "numerosity, commonality, typicality, and fair and adequate representation."  *Luiken v. Domino's Pizza, LLC,* 705 F.3d 370, 372 (8th Cir. 2013).  Second, the proposed class must meet at least one of the three requirements of Rule 23(b).  *Comcast Corp. v. Behrend,* 133 S. Ct. 1426,

1432 (2013).

The burden of showing that the class should be certified is on Vogt. *See Luiken,* 705 F.3d at 372. Vogt will meet this burden only if, "after a rigorous analysis," the Court is convinced that the Rule 23 requirements are satisfied. *Comcast,* 133 S. Ct. at 1432 (quotation marks and citation omitted). The Court has broad discretion in deciding whether class certification is appropriate. *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski,* 678 F.3d 640, 645 (8th Cir. 2012) (citation omitted).

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous to render joinder of all members impracticable. In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982). State Farm does not contest that this requirement is satisfied.

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███ *See* Doc. 150-6, at 48-49 and 66-67. Thus, the proposed class members are sufficiently numerous.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must show that the claims "depend upon a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will

4

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011). Commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, No. 13-206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton,* 688 F.2d at 561). Commonality is easily satisfied in most cases. *See Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 (S.D. Iowa 2009) ("The burden imposed by [the commonality] requirement is light and easily met in most cases.") (citing *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999), and Newberg on Class Actions § 3:10 (4th ed.)).

Plaintiff's claims in this action—for breach of the COI provision, for breach of the expense charge provision, for conversion, and for a declaratory judgment—all turn on interpretation of the Policy, which is a standard form contract to which each putative class member was a party. The claims also turn on State Farm's determination of COI rates, which was uniform. Doc. 150-2, at ¶¶ 7(c), 7(e), 29-30, 33, 37; Doc. 150-1, at 166:7-22, 171:21-172:11. Thus, the following questions are common to each putative class member:

- Is State Farm limited to using only those factors disclosed in the Policy when determining COI rates?

- Did State Farm use only the factors disclosed in the Policy when determining COI rates?

- Does loading expenses into COI rates violate the Policy's cap of $5.00 per month on expense charges?

- Did State Farm convert the property of Policy owners by deducting COI charges in excess of those amounts authorized by the Policy?

5

- Is the class entitled to damages as a remedy for State Farm's breaches?[2]

State Farm nonetheless suggests that these questions would not result in a common answer because, even if Plaintiff's assertions are correct, several class members were not injured. First, plaintiff now acknowledges that ▇ class members were uninjured. Second, when Plaintiff's expert's methodology is combined with the pooled mortality rate that State Farm purportedly employed, more than ▇ members of the class, including Vogt himself, are shown to have been unharmed by State Farm's conduct. Third, State Farm argues, certain deceased policyholders were not harmed by any purported COI overcharges in the Account Value.

### a. Policyholders Who Were Not Injured

Plaintiff acknowledges that, according to his expert, 487 of the holders of the Policy ("roughly 2% of the proposed class") were not injured by the COI rates that State Farm charged. Doc. 212, at 6. Plaintiffs argue that this is "no impediment to certification because these ▇ policyholders can be identified and specifically removed from the class." *Id.* at 7. State Farm does not deny that the ▇ policyholders may be identified and excluded from the class. *See* Doc. 217, at 5.

In any event, the fact that ▇ potential class members undisputedly were uninjured by the conduct at issue does not prevent class certification. *See Tyson*, 136 S. Ct. at 1050 (finding that "the question of whether uninjured class members may recover" was not "yet fairly presented . . . because the damages award ha[d] not yet been disbursed" and the record did not "indicate how it will be disbursed"). Insofar as there is no dispute that a discrete group of class

---

[2] *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'").

members were not injured by the alleged conduct at issue in this action, they may be excluded from the class.

### b. Mortality Rates: Pooled or Based on Policy Age?

State Farm next argues that application of its purportedly pooled mortality rate, along with Plaintiff's expert's methodology for calculating COI rates on the basis of mortality only, would establish that some ▮▮▮ of the more than ▮▮▮ members of the class, including Vogt himself, were uninjured, and therefore the class should not be certified.

The mortality risk of people in the same age, sex, and rating class may not be identical because policy age can change an individual policyholder's mortality risk. The longer it has been since a Policy was issued, the greater the individual's mortality risk. This is because one who bought a Policy long ago is more likely to have developed health problems since the underwriting department approved him as a policyholder. State Farm's mortality tables reflect the difference in the mortality risk of holders of the Policy of the same age, sex, and rating class. The tables show, for example, that State Farm calculates "six different mortality rates . . . for 35-year-old men of the same rating class depending on the years elapsed since the Policy was issued." Doc. 173, at p. 3.

State Farm insists that, despite using mortality tables showing six different mortality rates for policyholders of the same age, sex, and rating class, ▮▮▮ *Id.* ▮▮▮

▮▮▮ *See* Doc. 217, at 6 (citing Doc. 150.4 at 21).

Vogt argues that ▮▮▮

7

███████████████████████████████████████

███████████████████████████████████████████████████████████████ Doc. 194, at 6 (citing Doc. 150-2 at Ex. B.7, at 5 and at Attachment 1). Accordingly, Vogt's damages calculation methodology does not use a pooled mortality rate, but instead uses six different mortality rates for people of the same age, sex, and rating class, depending on policy length.

The question of whether State Farm used a pooled mortality rate or multiple mortality rates for the same age, sex, and rating class to account for policy duration will have a common answer for all of the members of the proposed class. Although the inputs in the calculation used to determine damages (if State Farm is found liable) may change depending on whether the mortality assumptions used are pooled or not, the actual methodology for calculating damages will not change, regardless of how the issue is decided. If, as State Farm argues, the COI rate was properly calculated using a pooled mortality rate, then any class members who are found not to have been injured by State Farm's conduct can be identified and excluded from any damages award.[3] Thus, this question does not warrant denial of class certification.

### c. Deceased Policyholders

State Farm also contends that deceased policyholders who elected for "Option 1," in which the Account Value is superseded by the death benefit, were not harmed by any purported

---

[3] State Farm's argument that Vogt's methodology does not correspond to the theory set forth in his complaint misses the mark. Whether a pooled mortality assumption or multiple mortality assumptions are used for insureds of the same age, sex, and rating class, Plaintiff's methodology for calculating damages will remain the same—only the inputs will change. Thus, Plaintiff's methodology is not inconsistent with the Complaint.

Furthermore, as explained in the Court's order on State Farm's motion for summary judgment, "by referencing both the 'policy year' and the 'policy anniversary' in describing the monthly COI rates, the Policy incorporates the duration . . . as a factor affecting those rates." Doc. 218, at 12. Questions concerning policy duration therefore are fairly within the scope of this litigation concerning whether State Farm used appropriate factors to determine COI rates.

COI overcharges in the Account Value because they did not receive the Account Value. Plaintiff argues, however, that, in order to prevent a policy from lapsing, holders were required to keep their Account Value sufficient to cover the monthly deduction, including the COI charge. Therefore, they may have had to pay premiums into the Policy to set off deductions. *See* Doc. 145-1, at 9 ("If, on any deduction date, the cash surrender value is not enough to cover the monthly deduction, the policy will stay in force until the end of the grace period. . . . A premium large enough to cover the monthly deductions for the grace period and any increase in the surrender charges must be paid before the end of the grace period; otherwise, this policy will lapse and terminate without value."). As such, the smaller the COI charge, the smaller the premiums required to prevent a lapse. Thus, even if a death benefit ultimately was paid on a policy, the holder might well have been injured by unauthorized deductions from her Account Value. In short, even deceased policyholders may have been injured by potentially unauthorized deductions from the Account Value.

### 3. **Typicality**

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995). In determining typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996).

Vogt's claims and the claims of the putative class members all arise from and relate to the interpretation and application of the Policy. Both the contractual language and State Farm's

methodology for determining the COI rates were uniform for all class members. The requirement of typicality thus is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that the class representative and class counsel will "fairly and adequately protect the interests of the class." The adequacy requirement is met where: "1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 458 (W.D. Mo. 2004) (internal quotes omitted). The requirement of adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

As a preliminary matter, as discussed above, the Policy terms and the methodology used to determine the COI rates that were charged were the same for every class member, so Vogt's interests are substantively identical to those of the other class members. *See Wal-Mart*, 564 U.S. at 349, n. 5 (noting that the two requirements of typicality and adequacy "tend to merge"). Moreover, Vogt estimates that he was overcharged by $3,182.62. His interest in the outcome of the case thus is sufficiently strong to ensure vigorous representation. He has participated in discovery, including by appearing for a deposition.

Furthermore, Vogt's attorneys in this litigation have extensive experience prosecuting class actions and cost-of-insurance cases and will vigorously represent the plaintiffs in this action. State Farm does not deny that Plaintiff's counsel is qualified to represent the class in this action.

10

State Farm argues that there is a conflict between Vogt and other members of the class because, while Vogt benefits from not using a pooled mortality rate, other members of the class may be disadvantaged by the use of a policy-duration-specific mortality rate. But whether State Farm used a pooled mortality rate is a matter in dispute. Plaintiff's position is that State Farm used the same mortality rates in formulating COI rates that Plaintiff's expert used, so using the Plaintiff's calculation, there is no conflict.

The issue is intertwined with the merits, and is not appropriately resolved upon a motion for class certification. It does not bar class certification.

The Court finds that the adequacy requirement is satisfied.

### B. Rule 23(b)(3)

Vogt argues that the proposed class should be satisfied pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

#### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. In other words, it "goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016). The requirement is not satisfied if "individual questions . . . overwhelm the questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013). The Eighth Circuit articulates the test as follows:

> When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining

11

> whether, if the plaintiff's general allegations are true, common
> evidence could suffice to make out a prima facie case for the class.
> While limited in scope, this analysis should also be rigorous.

*Luiken, LLC*, 705 F.3d at 377 (internal quotation and citation omitted). This inquiry is "far more demanding" than that conducted to establish commonality under Rule 23(a). *Amchem*, 521 U.S. at 623-24.

The major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate. *See Lafollette v. Liberty Mut. Fire Ins. Co.*, No. 14-04147-NKL, 2016 WL 4083478, at *12 (W.D. Mo. Aug. 1, 2016) ("[W]here standardized corporate policies constitute the very heart of the plaintiffs' claims, common issues will predominate because those policies would necessarily have to be reproven by every plaintiff.") (citation and quotation marks omitted)

State Farm nonetheless contends that the statute of limitations defense requires individualized determinations that make class certification impractical. According to State Farm, the Court should not assume that in the 22 years between when State Farm first issued the Policy and when Vogt filed this action, none of the class members became aware of the fact that COI rates were based on factors other than those specified in the Policy. But State Farm has "admit[ted] that the assumptions underlying the 'rates lower than those shown' [in the maximum COI table] are not disclosed to policyholders," and also has "[a]dmit[ted] that if policyholders without knowledge, experience or training wanted to understand how State Farm determined whether to set cost of insurance rates below the maximum rates identified in the Policy, and, if so, how much lower than the maximum rates, such policyholders would likely require

12

assistance." Doc. 199, at XXII-XXIII. Given these admissions, and the fact that State Farm has presented no evidence to suggest that the claims of any class member is time-barred, there is nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate. *See Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at \*\*11–12 (W.D. Mo. July 25, 2013) (rejecting defendants' argument that statute of limitations defense defeats predominance where defendants presented no evidence that plaintiffs had notice of the allegedly improper conduct), *aff'd in relevant part*, 852 F.3d 795 (8th Cir. 2017); *Schramm v. JPMorgan Chase Bank, N.A.*, 09–09442, 2011 WL 5034663, at \*12 (C.D. Cal. Oct. 19, 2011) (holding that "speculation that some class members' claims may be [time-]barred on the basis of actual knowledge is not sufficient to defeat certification").

### 2. **Superiority of a Class Action**

The final requirement of Rule 23(b)(3) is that the class action form be superior to other methods of adjudication, an analysis that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974). In determining whether superiority is met, a court considers:

> (A) the class members' interest in individually controlling the prosecution of separate actions;
> (B) the extent and nature of any litigation concerning this controversy already commenced by potential class members;
> (C) the desirability of concentrating the litigation of the claims in this forum; and
> (D) the difficulties likely to be encountered in managing a class action.

Rule 23(b)(3).

Vogt is the only class member to have come forward seeking to act as lead plaintiff in this class action. The costs of prosecuting each class member's claims individually would likely exceed each member's damages. *See* Doc. 150-2, ¶ 27. There is no evidence before the Court that there is any other case concerning the claims at issue here. The class members are persons in the State of Missouri. This division is centrally located in the state. State Farm does not suggest that the management of this case as a class action would present any significant or unusual difficulties.

Over ▮▮▮▮ insureds would have to bring claims individually if a class is not certified. In light of the predominance of common questions, alternatives to class litigation would be more burdensome and less efficient than participation in class litigation.

Thus, a class action is the superior method for adjudicating the claims of the proposed class members.

### C. Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." The Eighth Circuit has stated that, "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1775 (1986)).

Although a Rule 23(b)(2) class is not required to satisfy the additional predominance and superiority requirements of Rule 23(b)(3), "the class claims must be cohesive." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (quotation marks and citation omitted). In other

words, "the relief sought must perforce affect the entire class at once." *Id.* (emphasis omitted, citing *Dukes*, 131 S. Ct. at 2558). Cohesiveness is lacking where "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* at 480-81.

Because the terms of the Policy are the same for all potential class members, the interpretation will result in one declaratory judgment applicable to all class members. *See Bond v. Liberty Ins. Corporation*, No. 15-04236-NKL, 2017 WL 1628956, at *11 (W.D. Mo. May 1, 2017), *appeal denied*, No. 17-8021, 2017 WL 5484786 (8th Cir. May 24, 2017) (finding that, "because the litigation involves a form contract, the interpretation will result in one declaratory judgment and/or injunction applicable to all class members" and the requirement of cohesiveness therefore was satisfied), *appeal denied*, No. 17-8021, 2017 WL 5484786 (8th Cir. May 24, 2017).

However, under *Wal-Mart*, a class may not be certified for a claim for individualized monetary relief that is not merely incidental to the declaratory relief sought. 564 U.S. at 360-61. Vogt argues that declaratory relief in this case is "merely a prelude to a request for damages," and the individual monetary damages claims do not preclude certification, but the only cases Vogt cites in support of this argument pre-date *Dukes*. *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003); *Senn v. AMCA Int'l*, No. 87–1353, 1988 WL 168321, at *5 n.2 (E.D. Wis. Dec. 21, 1988). The Court therefore will certify a class pursuant to Rule 23(b)(3) only as to Count IV, which seeks declaratory relief.

### III.   CONCLUSION

For the foregoing reasons, Vogt's motion for class certification is granted. Pursuant to Rule 23(b)(3), the Court certifies a class of plaintiffs consisting of "[a]ll persons who own or

15

owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Missouri" for all counts, except that the Excluded Persons are excluded from the class. Pursuant to Rule 23(b)(2), the Court certifies a class of plaintiffs consisting of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Missouri" for Count IV alone, except that the Excluded Persons are excluded from the class.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 20, 2018
Jefferson City, Missouri