# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

MICHAEL VOGT,
on behalf of himself and all others
similarly situated,

       Plaintiff,

    v.

STATE FARM LIFE
INSURANCE COMPANY,

       Defendant.

No. 2:16-cv-04170-NKL

## ORDER

Plaintiff Michael Vogt brought this action, on his own behalf and on behalf of a group of policyholders, against defendant State Farm Life Insurance Company to recover for deductions of certain charges from the policyholders' account values—charges that Plaintiff maintained were unauthorized. The Court certified a class of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Missouri" (with certain exceptions not relevant here). Doc. 229. Before the matter was submitted to the jury, State Farm filed a Rule 50(a) motion seeking judgment as a matter of law. Doc. 347.

The jury found in favor of Plaintiffs on their claims for breach of contract and for conversion and awarded Plaintiffs $34,333,495.81 in damages. State Farm subsequently renewed its motion for judgment as a matter of law pursuant to Rule 50(b), and simultaneously moved for a new trial pursuant to Rule 59. Doc. 373.

For the reasons discussed below, State Farm's motions for judgment as a matter of law and motion for a new trial are denied.

## I.   <u>BACKGROUND</u>

Each member of the Plaintiffs' class purchased a flexible premium adjustable whole life insurance policy (the "Policy") from State Farm. This type of policy provides an investment, savings, or interest-bearing component in addition to the death benefit characteristic of standard term life insurance policies. The Policy required State Farm to maintain an interest-bearing account for the insured. The value of the account, which is owned by the insured, was to grow over time.

Each month, State Farm was permitted to make a deduction from the Policy that included "(1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." In a section entitled "Guaranteed Values Provisions," the Policy states:

> **Monthly Cost of Insurance Rates.** These rates for each Policy year are based on the Insured's age on the Policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Expenses and profits are not mentioned in the "Monthly Cost of Insurance Rates" provision.

State Farm developed mortality tables using proprietary data reflecting its mortality experience with its own insureds, including the 88-91 SFL and 93-97 SFL mortality tables. There is no dispute that age, sex, and rating class are factors used to differentiate policyholders in developing mortality tables. However, the COI rates charged to holders of the Policy were not equal to the mortality rates in State Farm's proprietary mortality tables. Instead, State Farm considered at least the following factors in determining the current rate: profits, expenses, asset share, interest rates, persistency, mix of business by mortality class, average sizes, and tax rates.

Nonetheless, at all times, the COI rates actually used for Plaintiffs were less than the maximum COI rates disclosed on page 4 of the Policy.

## II.  STATE FARM'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50 provides that a court may enter judgment as a matter of law against a party after the party has been fully heard if there is no legally sufficient evidentiary basis for that party's claims.  Fed. R. Civ. P. 50(a)(1).  "[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused."  *Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017) (quotation marks and citation omitted).  "Judgment as a matter of law is proper only when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict."  *Browning v. President Riverboat Casino–Mo., Inc.*, 139 F.3d 631, 634 (8th Cir. 1998).

State Farm argues that the Court should enter judgment in its favor because Plaintiffs failed to prove damages and because there purportedly was no evidence that State Farm used anything other than a pooled mortality rate in calculating COI rates.  For the reasons discussed below, the Court rejects these arguments.

### a.  Whether Plaintiffs Failed to Prove the Amount of Damages They Sustained

State Farm argues that Plaintiffs failed to make a submissible case on damages because the damages calculation was unreliable and speculative.  Plaintiffs respond that State Farm waived its right to challenge the reliability of the expert testimony, and moreover, that their expert's damages calculations and methodology were well-supported.

### 1. Whether State Farm Waived Its Right
### to Challenge Plaintiffs' Expert's Opinion

As a preliminary matter, Plaintiffs contend that State Farm waived any right it may have had to challenge Plaintiffs' expert's methodology because it failed to raise a *Daubert* challenge. State Farm counters that *Daubert* goes to the admissibility, not the sufficiency, of expert testimony, and its failure to make a *Daubert* challenge does not prevent it from challenging the expert's testimony on sufficiency grounds.

The Eighth Circuit has made clear that *Daubert* challenges must be filed in a timely fashion. *See, e.g., Fletcher v. Tomlinson*, 895 F.3d 1010, 1022 (8th Cir. 2018) (holding that defendants "waived their Daubert challenge" because they "did not submit a Daubert challenge to [the expert] by th[e] deadline"). Thus, because State Farm failed to make a timely *Daubert* motion, it has waived its objections to the admissibility of Scott Witt's testimony. Permitting an end-run around the rule requiring *Daubert* challenges to be timely made would waste the trial court's time and resources. A party cannot get a second bite at the apple by simply characterizing a motion challenging the contents of an expert report as a motion challenging the sufficiency of evidence.

Still, State Farm is correct that failure to raise a *Daubert* challenge does not bar a challenge to the *sufficiency* of evidence. *See Jenkins by Jenkins v. Missouri*, 122 F.3d 588, 598-99 (8th Cir. 1997) (construing challenge to expert evidence as one directed to sufficiency rather than admissibility because there was no indication that defendant had made a *Daubert* challenge in the court below); *Stevenson v. E.I. DuPont de Nemours & Co.*, 327 F.3d 400, 407 (5th Cir. 2003) ("Although DuPont lost the right to challenge the admissibility of the evidence, it did not lose the right to challenge the sufficiency of the evidence."); *In re Joint E. & S. Dist. Asbestos Litig. v. United States Mineral Prods. Co.*, 52 F.3d 1124, 1133 (2d Cir. 1995) (considering "whether the epidemiological and clinical data already in evidence was sufficient to justify the jury's verdict

finding causation" despite the fact that "the admissibility of the epidemiological studies was not at issue").

"[A] sufficiency inquiry asks whether the collective weight of a litigant's evidence is adequate to present a jury question." *Stevenson*, 327 F.3d at 407. Only if no rational jury could reasonably rely on the evidence can the Court find that the evidence is insufficient. *See Jenkins*, 122 F.3d at 598-99 (in discussing sufficiency in dicta, considering whether the evidence "provided a rational explanation for" the relevant issue); *Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1133 (explaining that the proper question in reviewing for sufficiency of evidence is "not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence"); *Stevenson*, 327 F.3d at 406-07 (rejecting defendant's argument that an expert's techniques were improper because the defendant 'never objected to the admission of this testimony' and 'the record show[ed] that [defendant]'s counsel adequately cross-examined [the expert] on his techniques" and affirming jury's finding after concluding in the face of sufficiency challenge that "the jury could reasonably infer that a trespass was commited"). A sufficiency-challenge thus is subject to a much higher standard than a *Daubert* motion. *See Stevenson*, 327 F.3d at 406-07 ("*Daubert* did not change the traditional role of a sufficiency inquiry, but only expanded the trial court's role regarding the admissibility of expert evidence.") (citing *Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1132); *Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1132 (rejecting argument that "under *Daubert*, admissibility and sufficiency determinations are functionally equivalent," and concluding to the contrary that "*Daubert* left the traditional sufficiency standard intact").

On a motion for judgment as a matter of law,

the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Kinserlow v. CMI Corp., Bid-Well Div.*, 217 F.3d 1021, 1025 (8th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)).

State Farm's challenge is based on the argument that Plaintiffs' expert Scott Witt's damages model is unreliable because (i) Witt was "unable to isolate the overcharge"; (ii) "there are many months in which the cost of insurance rate charged to Plaintiff was less than the mortality-only rate that he urges State Farm was at all times required to charge"; (iii) "there are policyholders in the class who have suffered no damages"; and (iv) Witt's opinion is based on the "unsupported" "presumption that State Farm was required to sort policyholders into six categories by policy duration." Doc. 347, p 4. These complaints about the validity and reliability of Witt's model invite assessment of admissibility—not sufficiency. *See, e.g., Stevenson*, 327 F.3d at 410 (finding that defendant's appeal was not frivolous despite waiver of right to challenge admissibility because the arguments on appeal "do not solely address the reliability of the evidence or its admissibility"); *Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1133 ("Applied to epidemiological studies, the question is not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence."). However, since State Farm has waived *Daubert* challenges, the Court can evaluate only whether, as State Farm claims, no rational juror could reasonably have relied on Plaintiffs' evidence.

## 2. Whether Plaintiffs' Damages Model Was Reliable and Valid

State Farm argues first that Plaintiffs were required to, but did not, isolate the non-mortality portion of the COI charge to calculate damages. Second, State Farm complains that Plaintiffs' model would result in increasingly higher COI charges for many class members. Third, State Farm argues that Plaintiffs' model is invalid because it disregards the mortality effects of tobacco use. Finally, State Farm contends that Plaintiffs' model does not account for the fact that the "account value" is supposedly irrelevant for policyholders who selected Death Benefit Option 1. The Court addresses these arguments in turn.

### A. Isolating the Overcharge

State Farm argues that Plaintiffs were required to isolate the non-mortality portion of the COI charge—the "overcharge"—in order to calculate damages. In other words, State Farm objects to Plaintiffs' damages calculations, which provided figures for the "overcharge" together with—rather than separate from—interest thereon.

"[I]n a breach of contract case, the goal in awarding damages is to put the non-breaching party in as good a position as he or she would have been in if the contract had been performed." *Gee v. Payne*, 939 S.W.2d 383, 385 (Mo. Ct. App. 1997). The contract required State Farm not only to refrain from levying charges for non-mortality factors, but also to pay interest, at a minimum of 4%, on the account value that Plaintiffs would have had if they had not been charged for the non-mortality factors. Thus, Plaintiffs' damages consisted of not only the "overcharge," but also the interest that was due thereon, and their model accordingly yielded a figure for the overcharge with interest.[1] This evidence was sufficient to make a submissible case for damages

---

[1] As discussed further in Section III(c) below, for similar reasons, Plaintiffs' model fairly reflects their damages for conversion as well. Moreover, even if State Farm did not convert the interest due on the overcharge, Plaintiffs would be entitled "to recover the reasonable value of th[e

and State Farm has submitted no legal authority suggesting that the evidence fails because the component parts of the calculation were not isolated for the jury.

The fact that State Farm's expert testified that the non-mortality component should have been isolated did not establish as a matter of fact or law that Plaintiffs' presentation of a damages figure comprised of both the overcharge and the minimum interest due was insufficient as a matter of law. Credibility determinations must be made by the jury, not the judge. *See Reeves*, 530 U.S. at 150-51. Moreover, State Farm presented no evidence or argument suggesting that the data upon which Witt relied—which was provided by State Farm itself—was inaccurate.

Because there is no uncontradicted evidence from any disinterested State Farm witness to the contrary, *see id.*, at 151, and because the Court must defer to credibility determinations made by the jury, the Court rejects State Farm's contention that there is not sufficient evidence to support the jury's damage award because Plaintiffs did not "isolate" the non-mortality component of their damages.

### B. Higher COI Rates for Some Class Members

State Farm's next objection to Witt's model is that it is flawed because it results in higher COI charges for some class members than they were actually charged or would have been charged by State Farm.[2] However, Plaintiffs' model used the proprietary pricing mortality rates that,

---

converted property], as established by appropriate proof" and "in the discretion of the trier of fact a plaintiff may also be allowed additional damages, calculated by way of interest on the value of the converted items from the date of conversion to the date of judgment." *Nika Corp. v. Kan. City*, 582 F. Supp. 343, 365 (W.D. Mo. 1983) (emphasis omitted). Here, the jury found that the unpaid interest was part of Plaintiffs' damages.

[2] State Farm's Rule 50(a) motion sought relief on similar grounds. *See* Doc. 347, p. 4 ("Mr. Witt has admitted that there are many months in which the cost of insurance rate charged to Plaintiff was less than the mortality-only rate that he urges State Farm was at all times required to charge."). The Court therefore rejects Plaintiffs' argument that State Farm waived this objection because it did not mention it in its Rule 50(a) motion. *See, e.g., Hagen v. Siouxland Obstetrics & Gynecology,*

according to State Farm's regulatory filings, reflected State Farm's mortality expectations. *See* Doc. 384, p. 3. The fact that the rates that State Farm actually charged were not always higher than the mortality rate that Plaintiffs' expert calculated does not mean that Plaintiffs' model does not adequately capture the non-mortality component of the charge. The proprietary pricing mortality tables State Farm used to develop the COI rates, unlike the COI rates themselves, did not distinguish between those who did and those who did not use tobacco, and State Farm "smoothed" the COI rates after loading costs and expenses. *See id.* ("An appropriate smoothing was applied to the current monthly cost of insurance rates to ensure that these rates would have a logical non-decreasing pattern as attained age increases.").

An inference that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision. A policyholder in the prime of youth, with low mortality pricing, could be expected to be more tolerant of absorbing the non-mortality charges in their COI rate than an aging policyholder who is already subject to a higher mortality pricing. Whether Witt's model accurately captured Plaintiffs' damages was an issue for the jury to resolve. A reasonable juror could understand the calculations made by Witt, the logic of those calculations, and the source of the data upon which he relied. The jurors heard State Farm's cross-examination of Witt.[3] They also heard State Farm's expert criticize Witt's methodology. In fact the jury heard

---

*PC*, 799 F.3d 922, 928 (8th Cir. 2015) (holding that "grounds that are 'inextricably intertwined' to those in the Rule 50(a) motion may be raised in a post-trial Rule 50(b) motion" and that the Rule 50(a) motion need only "have 'sought relief on similar grounds'") (citations omitted).

[3] State Farm's contention that it was precluded from presenting evidence of the higher COI charges that would apply to some class members under Witt's model is contradicted by the record, which shows that State Farm elicited testimony to support the argument. Doc. 363 (Trial Tr., Vol II), at

the very arguments that State Farm is making here. Nonetheless, they rejected State Farm's arguments and the conclusions of its witnesses. In light of the evidence presented, this decision was a reasonable one for a rational jury to reach.

### C. Witt's Model's Failure to Distinguish Between Policyholders Based on Tobacco Use

State Farm argues that Plaintiffs' models are deficient because they disregard the mortality effects of tobacco use. Plaintiffs respond that their expert's spreading the risk of tobacco use across both users and non-users of tobacco (described as factoring in tobacco use on a "blended basis") was appropriate because that is how State Farm itself measured mortality expectations.

To make his calculations, Plaintiffs' expert, Scott Witt, used a mortality table that was described as the starting point for the COI rate calculations in the State Farm Life Insurance Company Actuarial Memorandum for Form 94030 that was submitted to New Jersey regulators (the "New Jersey Actuarial Memorandum"). Doc. 384 (Trial Ex. D001, New Jersey Actuarial Memorandum), p. 5 (describing "Mortality" assumption as a percentage of 88-91 SFL). The 88-91 SFL mortality table undisputedly did not distinguish between tobacco users and those who did not use tobacco, and tobacco use was not one of the enumerated factors in the Policy on which COI rates were supposed to be based. *Id.*, p. 5 ("88-91 SFL is a (sex distinct) company experience table with a five year select period.") and Attachment 1; Doc. 382-5 (Trial Ex. P0027A, Policy),

---

188:19-190:19, 192:21-194:16; Doc. 364 (Trial Tr., Vol III), at 305:7-18, 305:25-306:7. Moreover, in this action for damages, and not injunctive relief, there is no requirement that State Farm charge policyholders an increasingly higher COI charge to bring the charges in line with Plaintiffs' model moving forward. Such evidence therefore would have been speculative.

p. 10.  For these reasons, Witt's use of mortality tables that factored tobacco use in on a blended basis did not render his model unreliable or speculative.[4]

### D.  Holders of Death Benefit Option 1

State Farm argues that Plaintiffs' model is deficient because it does not account for the fact that the "account value" is supposedly irrelevant for policyholders who selected Death Benefit Option 1 and have since passed away.[5]  However, Plaintiffs argue that class members who selected Death Benefit Option 1 sustained a measurable loss to their account value.

Upon death, a policy owner who selected Death Benefit Option 1 is entitled to the face amount of their policy, not the amount in their account value.  Witt's calculation of the diminution in the account value as of the date of death of those who selected Death Benefit Option 1 and later died does not represent a flaw in his methodology or calculations.  Even if State Farm is correct that policyholders who chose Death Benefit Option 1 did not sustain damages, this argument would not justify rejecting Witt's damages model in its entirety.  At most, it could justify only a finding that policyholders who selected Death Benefit Option 1 were not damaged—and State Farm has not requested such a remedy.

---

[4] In any case, State Farm waived this argument by failing to raise it in its Rule 50(a) motion.  *See Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) (noting that "issues not included in a Rule 50(a) motion are waived and cannot be included in a Rule 50(b) motion") (citation omitted).  State Farm argues that its Rule 50(a) motion sought relief on similar grounds, or that similar issues were raised in its written summary judgment motion, but none of those motion papers mentions the word "tobacco," let alone the argument that Witt's model is flawed because it did not sort policyholders by tobacco use.

[5] State Farm may have waived this argument as well because it failed to raise it in its Rule 50(a) motion.  There is a significant difference between the argument in the Rule 50(a) motion that Witt "admitted that there are policyholders in the class who have suffered no damages" (Doc. 347, p. 4) and the argument in the Rule 50(b) motion that Witt "admitted that with respect to death benefit option 1 account holders, he offered no opinion at all about their alleged damages" (Doc. 394, p. 4).  However, the Court need not decide this issue to resolve this motion.

*    *    *

In short, as discussed above, State Farm has failed to establish that no rational jury could have relied on Witt's testimony.

### b. Whether a Reasonable Jury Could Conclude that State Farm's Mortality Data Was Not Pooled

State Farm argues that the only evidence in the record shows that State Farm used pooled mortality data to determine the monthly COI rates. As a preliminary matter, State Farm did not raise this argument in its Rule 50(a) motion, and the argument therefore has been waived. *See Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 788 (8th Cir. 2009) (holding that party that "failed to raise [a] ground in its Rule 50(a) motion" could not raise the ground for the first time in a Rule 50(b) motion).

In any event, this argument fails on the merits. State Farm employee testimony established that the mortality assumption used to price the Form 94030 was a percentage of the 88-91 SF mortality table—a select and ultimate table identified in the New Jersey Actuarial Memorandum. Doc. 382-7 (Trial Ex. P0246, Streily Depo. Tr.), at 87:21-88:7, 151:6-152:25; Doc. 384 (Trial Ex. D001, New Jersey Actuarial Memorandum), p. 5.[6] Similarly, the New Jersey Actuarial Memorandum states that State Farm's pricing mortality was a percentage of the 88-91 SF table. Doc. 384 (Trial Ex. D001, New Jersey Actuarial Memorandum), p. 5. A select and ultimate table assigns a different mortality rate to an insured based on how long it has been since they have gone through underwriting, because the longer it has been since someone has gone through

---

[6] Form 94030 was also repriced using a select and ultimate mortality table. *See* Doc. 364 (Trial Tr., Vol III), at 282:12-283:5; *see also* Doc. 382-7 (Trial Ex. P0246, Streily Depo. Tr.), at 228:7-228:15 (testifying that the mortality tables used to re-price the Form 94030 in 2002 considered policy year).

underwriting, the higher that person's mortality risk. Doc. 363 (Trial Tr., Vol II), at 134:1-135:3; Doc. 382-7 (Trial Ex. P0246, Streily Depo. Tr.), at 152:3-152:25, 196:21-197:23. In contrast, a pooled mortality table does not differentiate based on how long it has been since the insured went through underwriting. Doc. 363 (Trial Tr., Vol II), at 135:4-7; Doc. 364 (Trial Tr., Vol III), at 274:22-275:4; 277:17-19. Thus, there was evidence indicating that State Farm did not use pooled mortality data in setting the monthly COI rates.

State Farm's purported evidence that the mortality rates were pooled before they were loaded with costs and expenses derives from an employee who admitted that he did not personally participate in the pricing or the repricing of Form 94030. Doc. 364 (Trial Tr., Vol III), at 257:13-17, 272:1-6, 272:24-273:11. Although Rusty Hendren testified that the subscript "x" next to "COI" in the pricing formula in the New Jersey Actuarial Memorandum meant pooling, the jury reasonably could have concluded that even if subscript "x" meant pooling, its position next to COI meant that State Farm pooled its COI rates, and not that it pooled its underlying mortality rates. *See* Doc. 384 (Trial Ex. D001, New Jersey Actuarial Memorandum), p. 3 ("Separate $COI_x^{88-91}$ SFL were calculated for male aggregate, female aggregate, (ages less than 20) and for male tobacco, female tobacco, male non-tobacco, and female non-tobacco (ages 20 and greater). These rates were loaded for expenses and profit margins and then compared to $COI_x^{1980}$ CSO.").[7] Hendren also conceded that the subscript "x" could mean "age last birthday," and that an unpooled mortality table can be an age-last-birthday table. *Id.*, at 278:17-280:15.

Thus, State Farm's purported evidence of pooled mortality rates is far from conclusive, and does not warrant judgment in State Farm's favor. *See, e.g., Brown v. Sandals Resorts Intern.*, 284

---

[7] Notably, this language does not make clear whether the "expenses and profit margins" were loaded after the "[s]eparate $COI_x^{88-91}$ SFL were calculated," as State Farm has urged, or whether they were loaded as part of the calculation of the $COI_x^{88-91}$ SFL rates.

F.3d 949, 954 (8th Cir. 2002) (holding that where "there was conflicting evidence presented at trial with respect to" an issue, the "argument is actually a challenge to the weight of the evidence presented, and not to its sufficiency as a matter of law," and noting that "[i]t is axiomatic that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (quotation marks and citations omitted).

## III.  **STATE FARM'S MOTION FOR A NEW TRIAL**

Under Rule 59(a) of the Federal Rules of Civil Procedure, the Court may grant a motion for a new trial "on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A new trial may be granted when the first trial resulted in a miscarriage of justice, the verdict was against the weight of the evidence, the damages award was excessive, or there were legal errors at trial. *Gray v. Bucknell,* 86 F.3d 1472, 1480 (8th Cir. 1996). The Court should grant a new trial where erroneous evidentiary rulings "had a substantial influence on the jury's verdict." *Littleton v. McNeely*, 562 F.3d 880, 888 (8th Cir. 2009) (quoting *Harris v. Chand*, 506 F.3d 1135, 1139 (8th Cir. 2007)). A motion for a new trial should be granted only if the jury's verdict is so against the weight of the evidence that it constitutes a miscarriage of justice. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000).

State Farm argues that a new trial is warranted because of legal errors in the procedure by which the Court invited and granted Plaintiffs' oral motion for summary judgment; the Court's ruling concerning the Policy language governing what the COI rates could be "based on"; the Court's precluding State Farm's expert from testifying regarding whether the New Jersey Actuarial Memorandum showed that State Farm pooled its mortality rates before calculating COI rates; the Court's instruction on the conversion claim; and the Court's permitting Plaintiffs to submit three

new damages calculations just before objections to trial exhibits were due. For the reasons discussed below, the Court finds no error warranting a new trial.

### a. Whether the Granting of Plaintiffs' Oral Motion for Summary Judgment Constituted Reversible Error

State Farm argues that the Court's granting of Plaintiffs' oral motion for summary judgment was in error both procedurally and substantively. First, State Farm argues that the Court erred in authorizing Plaintiffs to move for summary judgment orally, days before the trial commenced, and entering a decision granting the motion on the Saturday evening before the Monday on which opening statements were to begin. State Farm also argues that the Court was wrong to conclude that the Policy permitted State Farm to consider nothing other than the enumerated mortality factors in setting the monthly COI rates, and that State Farm was not permitted to simply charge any amount up to or equal to the maximum COI rates set out in the Policy.

### 1. Whether the Procedure by Which the Court Permitted and Granted Plaintiffs' Motion for Summary Judgment Was Improper

The Court permitted each side to make an oral motion for summary judgment when it became obvious, during consideration of the parties' motions in limine, that certain legal issues that technically had not yet been resolved by the Court were ripe for resolution. Indeed, the resolution of several motions in limine was dependent on those substantive legal rulings. On the issue of whether State Farm's inclusion of profits and expenses in the COI charges it levied on Plaintiffs' account values was permitted by the terms of the Policy, the Court had already rejected the interpretation advanced by State Farm in its written motion for summary judgment. The Court had not ruled in Plaintiffs' favor on the issue, however, as Plaintiffs had not moved for summary judgment. (When the deadline for summary judgment motions had passed, the class of plaintiffs

had not been certified, and therefore Plaintiffs were not in a position to move for summary judgment within the time allotted by the scheduling order.)  Because resolution of the purely legal issue of contract interpretation would clarify the scope of the trial for both the parties and the jury, and because the issue had already been briefed upon State Farm's written summary judgment motion, the Court permitted Plaintiffs to make an oral motion for summary judgment on the narrow issue of whether the Policy permitted State Farm to "base[]" its rates on anything other than the enumerated mortality factors.  The Court simultaneously permitted State Farm to make an oral motion for summary judgment with respect to Plaintiffs' claim for punitive damages, although State Farm had previously had the opportunity to move to strike the punitive damages.  *See* Docs. 166, 167, and 199 (State Farm's written summary judgment motion and supporting papers, which make no mention of punitive damages).[8]  Resolution of these legal issues—which were in any event to be decided by the judge, and not the jury—streamlined the jury trial.

Rule 56 authorizes the Court to set the schedule for motions for summary judgment.  Fed. R. Civ. P. 56(b).  The Rule also authorizes the Court, after notice and reasonable time to respond, to grant summary judgment for even a nonmovant, or on grounds not raised by a party, or after *sua sponte* identifying material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f).

Here, even before the Court expressly authorized the parties to make their respective oral motions, the parties had submitted briefing on the issues raised in the motions.  First, State Farm had moved for—and been denied—summary judgment on the contract issue.  Docs. 172, 199, 218. Furthermore, the parties raised all of the issues in their motions in limine, responses to which were filed on May 16, 2018.  Docs. 259, 261, 269, 271.  The parties were expressly permitted to make

---

[8] State Farm has taken no issue with the Court's granting of the oral motion for summary judgment that concerned Plaintiffs' claim for punitive damages.

the oral motions for summary judgment at the pretrial conference on Monday, May 21, 2018. Doc. 288, Tr. at 50:13-21 and 58:22-25. The responses to the oral summary judgment motions were due Friday, May 25, 2018. *Id.* Replies were due Tuesday, May 29, 2018. Doc. 288, Tr. at 58:10-17. When State Farm expressed concerns about the procedure for Plaintiffs' oral summary judgment motion, the Court permitted State Farm to submit a sur-reply on June 2, 2018.[9] Thus, twelve days elapsed from when the oral motions for summary judgment were authorized and State Farm's last opportunity to brief the issues. Twelve days constituted ample time to respond. *See, e.g., Trs. of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.,* 704 F.2d 822, 827-28 (5th Cir. 1983) ("The rule that ten days must elapse between the filing of a summary judgment motion and the hearing on the motion is intended to give the opposing party opportunity to prepare responsive pleadings and counter affidavits. The trustees were not denied that opportunity."); *cf. Nat'l Fire Ins. v. Bartolazo*, 27 F.3d 518, 520 (11th Cir. 1994) (holding that "the 10-day advance notice requirement . . . is mandatory . . . to satisfy the notice and hearing dictates of Rule 56").[10]

For these reasons, the Court finds no error in the procedure by which the Court permitted and then granted Plaintiffs' motion for summary judgment.

---

[9] State Farm complains that the Court "requir[ed] a surreply to be filed *after* jury selection on Saturday evening before opening statements Monday morning . . . ." The Court did not *require* a surreply, but instead *permitted* State Farm to submit a sur-reply. *See* Doc. 323, Tr. 3:15-4:1 ("I know that State Farm has expressed concern about the process of resolving the plaintiffs' oral motion for summary judgment. I think to address that issue, I will give State Farm until 5 p.m. on June 2nd if they want to file a sur-reply."). The Court issued a ruling on the motion that same evening. To the extent that State Farm's complaint relates to jury selection, given that State Farm received notice of Plaintiffs' oral motion for summary judgment on May 21, and jury selection did not begin until June 1, the Court finds the complaint frivolous.

[10] The 10-day requirement no longer appears in Rule 56, but it nonetheless serves as a useful guide as to whether notice is reasonable.

### 2. Whether the Court's Ruling on Plaintiffs' Motion for
### Summary Judgment and the Resulting Instruction Were in Error

State Farm argues that the Court's ruling on Plaintiffs' motion for summary judgment was "new" because that was "the first time in the litigation[] that the Court ordered that State Farm would be foreclosed from presenting any evidence or argument regarding these contractually agreed upon [maximum] rates to the jury at trial." Doc. 394, p. 10. But State Farm had notice of the Court's position regarding the meaning of the Policy language at issue and the relevance of the maximum COI rates as early as April 10, 2018, when the Court denied State Farm's motion for summary judgment. *See* Doc. 219, at 8 ("Given the COI language in the Vogt policy and its context in the policy as a whole, the Court believes that no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance."); *id.* at 12 ("In specifying that it would not always charge the maximum COI rate, but that it nonetheless would 'base[]' the 'Monthly Cost of Insurance Rates' on 'the Insured's age on the Policy anniversary, sex, and the applicable rate class,' State Farm did not suggest to a reasonable person that only the 1980 CSO Tables would be used."); *id.* at 12-13 ("Finally, State Farm argues that the language '[w]e can charge rates lower than those shown' permits, but does not require, State Farm to charge rates below the maximum monthly COI rates. While this language by itself does not require State Farm to determine the COI charge in any particular way, it does nothing to limit the obligations that the other language in the COI provision—discussed above—imposes on State Farm."). State Farm's claims of surprise and prejudice thus have no merit.

Insofar as State Farm seeks to change the Court's prior legal ruling on the meaning of the Policy language, State Farm has presented no new facts or law that would warrant reconsideration.

### b. Whether Prohibiting State Farm's Expert from Testifying Regarding the New Jersey Actuarial Memorandum Constituted Reversible Error

State Farm argues that the Court erred in precluding State Farm from eliciting testimony from its expert regarding the New Jersey Actuarial Memorandum, while permitting Plaintiffs to cross-examine their expert regarding the same document. As an initial matter, an expert "report must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). However, the only opinion in the report of State Farm's expert witness David Weinsier that was not excluded did not indicate that Weinsier had any opinion as to whether the New Jersey Actuarial Memorandum meant that State Farm pooled its mortality rates before loading them for expenses and profits to develop its COI rates. Doc. 208-5, at pp. 10-14. State Farm argues that, because Weinsier stated that he relied on the declarations of State Farm employees Carl Streily and Jeffrey Holzbauer and "corresponding exhibits" to opine that "State Farm uses a pooled . . . approach to determine expected mortality for the purpose of deriving COIs," and because those declarations relied upon and exhibited the New Jersey Actuarial Memorandum, Weinsier's opinion regarding the memorandum should have been permitted. However, the purported connection between Weinsier's opinion and the memorandum is attenuated at best. Indeed, State Farm was not able to identify the connection between the two when arguing the issue before the Court. *See* Doc. 364, Tr. 234:24-235:13; 241:2-18; 244:22-245:10.

Moreover, State Farm was not prejudiced by the Court's preclusion of Weinsier's discussion of the New Jersey Actuarial Memorandum, as Weinsier nonetheless testified that "COI, small x" "is reflective of a pooled rate, or sometimes referred to as an attained age rate such that the rate is identical for every individual of a specific age, regardless of when the policy was taken out." Doc. 364, Tr. 349:12-17. In other words, State Farm elicited Weinsier's testimony

concerning the meaning of "x" in the same formula shown in the memorandum. The Court's exclusion of Weinsier's testimony regarding whether the New Jersey Actuarial Memorandum described pooling of mortality rates thus does not warrant a new trial. *See Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982) (finding no prejudice in district court's exclusion of expert testimony where the testimony would have been largely cumulative of testimony by other witnesses); *Froemming v. Gate City Fed. Sav. & Loan Ass'n*, 822 F.2d 723, 732 (8th Cir. 1987) (same).

Furthermore, in response to Weinsier's testimony that Plaintiffs' expert's model was "invalid and unreliable" because he did not use a pooled mortality rate, Plaintiffs cross-examined Weinsier about the unpooled mortality rate in the actuarial memorandum. Doc. 364, Tr. 348:2-19. This was fairly within the scope of cross-examination. Yet, State Farm did not perform—or seek permission to perform—redirect on the subject of the memorandum. Ex. A, Trial Tr. (Vol III) 363:20-21 (State Farm declining to conduct a redirect examination of Weinsier); *see Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 981 (8th Cir. 2014) ("The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination.") (citations and quotation marks omitted).

### c. Whether the Court's Instruction on Plaintiffs' Conversion Claim Constituted Reversible Error

State Farm insists that the Court's instruction regarding Plaintiffs' conversion claim was improper. The instruction at issue was as follows:

> Your verdict must be for Plaintiffs on their claim for conversion if you believe, First, each Plaintiff was the owner of the account value. Second, State Farm took nonmortality factors into account when making deductions from the account value for the monthly cost of insurance rates. Third, one or more of the Plaintiffs was thereby damaged. Fourth, as a result, State Farm deprived any Plaintiff who was

> damaged of possession of the portion of the funds in the account value attributable to nonmortality factors. It has previously been determined that the first, second, and fourth elements are established as a matter of law. You must treat those elements as having been proved. Therefore, your verdict must be for Plaintiffs on their claim for conversion if you believe that one or more Plaintiffs suffered damages as a result of State Farm's use of nonmortality factors to set the monthly cost of insurance rates that Plaintiffs paid.

State Farm argues that: (i) "the Court's second element was . . . not an accurate statement of law, as it d[id] not require Plaintiff to identify or prove *any* wrongful appropriation"; (ii) "the Court's instruction corresponding to the third element of conversion would have required Plaintiff to prove that 'State Farm deprived any Plaintiff *who was damaged* of possession of the portion of the funds in the account value attributable to nonmortality factors,'" "[r]ather than require a finding that State Farm deprived the Plaintiff of possession of some specific corpus"; and (iii) the Court's instruction that the jury treat all but the third element as having been proved left only the question of damages—an element not required for conversion—to be decided by the jury. Doc. 374, p. 19-20.

In Missouri, conversion consists of three elements: (1) plaintiff was entitled to possession; (2) defendant wrongfully appropriated the item plaintiff was entitled to possess; and (3) defendant thereby deprived plaintiff of the right to possession of the object. Missouri Approved Jury Instructions 23.12(1) Conversion – Taking (7th ed. 2012). In granting Plaintiffs' motion for partial summary judgment on the issue of breach of contract, the Court found as a matter of law that (1) each plaintiff was entitled to possession of any monies that were deducted from the account value under the guise of COI charges that were attributable to non-mortality factors, (2) to the extent that State Farm appropriated such monies from any plaintiff, the appropriation was wrongful, and (3) State Farm deprived each such plaintiff of the right to possession of the full account value. The questions remaining for the jury then were whether State Farm deducted monies for non-mortality factors from each plaintiff's account value, and if so, how much money was so deducted. In other

words, the question was whether each plaintiff was damaged, and if so, what the amount of damages was. Thus, while the instruction did not follow the form jury instruction for conversion, it clarified for the jury the only issues that had not been decided as a matter of law. *See Fin. Holding Corp. v. Garnac Grain Co.*, 965 F.2d 591, 595 (8th Cir. 1992) ("The trial court has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of [state] law. Thus, jury instructions are sufficient if they state the governing law fairly when read as a whole.") (quotation marks and citation omitted); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008) (issue on review of jury instructions is "simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury"); *see also Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 390 (8th Cir. 2016) ("A federal district court presiding over a diversity case is not bound to give the jury instruction requested by the litigants, nor is the court constrained to follow the language contained in a state's uniform jury instructions.") (quotation marks and citations omitted).

The Court's legal rulings and the jury's verdict combined produced a finding on the law and the facts that addressed every element of conversion. Specifically, the Court and the jury found that: (1) the plaintiffs were entitled to possession of the monies in the account value that did not represent mortality-related costs, with at least the minimum interest due thereon; (2) State Farm wrongfully appropriated specific monies that did not represent only mortality-related costs, together with interest due thereon, from the account values of those plaintiffs who sustained damages; and (3) State Farm thereby deprived those plaintiffs of the right to possession of those specific monies.

State Farm complains that the instruction was improper because it "d[id] not require Plaintiff to identify or prove *any* wrongful appropriation." Doc. 374, at 19. But to the extent that any plaintiff sustained damages, State Farm's unauthorized deduction of the monies at issue was a wrongful appropriation under the terms of the Policy as interpreted by the Court. State Farm's complaint concerns form rather than substance. It does not warrant a new trial. *See In re Prempro Products Liability Litigation*, 586 F.3d 547, 568 (8th Cir. 2009) (rejecting challenge to jury instruction where "[t]he instruction contain[ed] the substantive requirements of proximate cause [and] what remain[ed] is form and language, which [is left] to the court's broad discretion").

Finally, State Farm argues that the Court's instruction obscured the purported fact that Plaintiffs failed to establish the "corpus" for their conversion claim. State Farm claims that "Plaintiff could not specifically identify the amount converted." *Id.*, at 20. But it was to address this concern that the conversion instruction included a requirement that each plaintiff be damaged. To the extent that any given plaintiff was damaged, the damages constituted the "corpus" of the conversion claim. The damages were the monies unlawfully taken from Plaintiffs' account values, including interest. *See, e.g., Gadberry v. Bird*, 191 S.W.3d 673, 675-76 (Mo. Ct. App. 2006) ("[M]isappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose.").

State Farm argues, however, that failure to apply interest cannot constitute conversion, and because Plaintiffs' damages calculations included interest, the damages cannot represent the "corpus" that was misappropriated. Yet, State Farm does not cite, and the Court is not aware of, any authority suggesting that such interest is not recoverable. Indeed, case law suggests the contrary. *See, e.g., Greenwood v. Bank of Illmo*, 782 S.W.2d 783, 788 (Mo. Ct. App. 1989)

(noting, in affirming award for conversion of a certificate of deposit despite defendant's contention that the court awarded interest in error, that "[i]t may be that the amount of the judgment approximates the amount due on the CD with interest accrued to date of judgment"); *McKee v. Downing*, 224 Mo. 115, 128-29, 124 S.W. 7, 12 (1909) (noting in dicta "that those who are the equitable beneficial owners of the fund which has been by another invested in land and who has taken the legal title in himself, have an option to sue for the land itself, or to sue for the amount of money so converted, *with interest thereon from the time of the conversion*") (emphasis added).

The Policy provides that "[a]n interest rate of at least 4% a year will be applied to the account value."  Doc. 382-5 (Trial Ex. P0027A, Policy), p. 10.  Thus, to the extent that State Farm wrongfully deducted monies from the account value, it deprived the holder of the interest due thereon as well as the monies itself.  *Greenwood*, 782 S.W.2d at 788.  Had State Farm not deducted without authorization monies for non-mortality factors, the account value for each plaintiff who sustained damages would have been greater by the amount taken plus the interest due thereon. State Farm owed the interest, and it would have been part of the account value.  The monies that State Farm took without authorization from the account value of each plaintiff who sustained damages, with the 4% interest that should have been accruing thereon, formed a sum certain, an amount equivalent to the damages found by the jury.  Plaintiffs therefore established a "corpus."

### d. Whether the Court Abused Its Discretion in Authorizing Plaintiffs to Present Three Damages Calculations Not Disclosed in Discovery

State Farm complains that the Court erred in permitting Plaintiffs to submit certain trial exhibits at the eleventh hour.  The exhibits represented three additional damages calculations that used the same methodology that Plaintiffs' original model used, but with different assumptions. While the original model assumed that the cross-over and pooling concepts would not apply, the three trial exhibits respectively assumed: (1) that cross-over, but not pooling, applied (the jury

adopted the damages calculation set forth in this exhibit); (2) that pooling, but not cross-over, applied; and (3) that cross-over and pooling applied (the same calculation performed by State Farm's expert). State Farm characterizes the exhibits as expert opinions that were previously undisclosed. Plaintiffs, on the other hand, characterize the exhibits as "summaries" under Rule 1006. Plaintiffs point out that the calculations in each of the four damages spreadsheets remained the same, and that the three subsequently-produced spreadsheets simply applied the theories advanced by State Farm's expert, Dr. Anne Gron.

Rule 1006 permits parties to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," so long as the "[t]he proponent . . . make[s] the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." The Eighth Circuit has held that "[s]ummary charts are admissible if (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." *United States v. Needham*, 852 F.3d 830, 837 (8th Cir. 2017) (citations and quotation marks omitted). Here, the Court permitted State Farm "to depose Plaintiff's expert for the sole purpose of testing the mathematical calculation made by Plaintiff's expert and to have him explain what calculations were made and how they were derived." Doc. 289. The Court also permitted State Farm "to submit its own exhibit in response to, or to give its expert an opportunity to comment on, the calculations by Plaintiff's expert that were at issue . . . ." *Id.* Thus, State Farm had opportunities to test the subsequently-produced spreadsheets and to provide competing exhibits if appropriate. State Farm's expert "checked" the calculations in the subsequently-

produced spreadsheets and reported no concerns about them. Doc. 364 (Trial Tr., Vol. III), at 329:2-330:11. State Farm produced no competing exhibits.

The exhibits at issue were admissible pursuant to Rule 1006. They summarized voluminous data—concerning the mortality rates that State Farm told regulators were the basis for its COI charges, as well as the actual COI charges deducted from Plaintiffs' account values—that could not otherwise efficiently and effectively be presented and analyzed at trial. *See, e.g., Klaczak ex rel. United States v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 669 (N.D. Ill. 2006) (ruling that, while expert testimony was "not necessary or helpful," calculations could be presented in "a summary chart concerning the volume and value of false claims . . . in accordance with Rule 1006"); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010) ("Rule 1006, which provides for parties to present the contents of voluminous documents in 'the form of a chart, summary, or calculation,' allows MCS to concisely present to a jury the total amount of receivables that should have been transferred to MCS pursuant to the Agreement."); *Raynor v. G4S Secure Sols., USA Inc.*, No. 17-00160, 2018 U.S. Dist. LEXIS 97682, at **15-16 (W.D.N.C. June 7, 2018) (finding admission of exhibit proper under Rule 1006 where voluminous data substantiating the calculations had been admitted into evidence, and defendant "had access to all underlying documents supporting the calculations in the exhibits" and "Defendant had the opportunity to cross-examine [the person who created the calculation] and to rebut the evidence in the exhibit through testimony of witnesses it called on direct"); *Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 700-01 (2010) (accepting exhibit described as "substantive evidence of plaintiffs' damages" "as a summary under Fed. R. Evid. 1006" where "Plaintiffs made all the predicate showings (voluminous documentation, presentation in the form of a chart or calculation, delivery of copies of originals to the other party)"); *Haynes Trane Serv.*

*Agency v. Am. Standard, Inc.*, 573 F.3d 947, 965 (10th Cir. 2009) (noting that summaries could "have been used to shorten the proceedings and relieve the jury from the task of reviewing each individual" request for payment) (citing Fed. R. Evid. 1006).

State Farm's contention that the spreadsheets constituted undisclosed expert opinions is unconvincing. Witt did not change his opinions concerning whether cross-over or pooling should be applied through or because of the new spreadsheets. Instead, he applied the cross-over and pooling concepts—which were espoused by State Farm, and not Plaintiffs—to the damages calculation methodology he had already formulated and disclosed. Doc. 363 (Trial Tr., Vol. II), at 135:14-137:5 (Witt describing the work relating to the new spreadsheets as "essentially a what-if scenario, what if State Farm is right about these various points"). Furthermore, while the subsequently-produced spreadsheets yielded new damages figures, the data used in the spreadsheets were not new—they were the same data that had been disclosed during discovery. State Farm therefore cannot colorably claim surprise or prejudice.[11]

For these reasons, admission of the three damages calculations at issue was not in error.

---

[11] State Farm complains that the Court authorized Plaintiffs to provide revised worksheets by noon on June 3—the eve of trial. Doc. 374, p. 22. However, the Court ordered Plaintiffs to provide the revised worksheets to address State Farm's argument that the lost account values contained in the worksheets included policy owners who either were State Farm employees or had opted out of the Class. State Farm did not provide the list of its employees—which was required for the revisions—until June 1. Trial Tr. (Vol. I) 28:25-29:25. The Court therefore rejects this argument.

## IV. <u>**CONCLUSION**</u>

For the foregoing reasons, State Farm's Rule 50 motions for judgment as a matter of law and its Rule 59 motion for a new trial are denied.

<u>/s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>October 11, 2018</u>
Jefferson City, Missouri