IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL VOGT, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 2:16-CV-04170-NKL<br>) |
| STATE FARM LIFE INSURANCE COMPANY | )<br>)<br>)<br>) |
| Defendant. | ) |

## ORDER

Class Counsel move for an award of attorneys' fees equal to one-third of the common fund at the time of distribution, as well as expenses, and a service award for the class representative, Mr. Vogt. Doc. 426. The common fund (the "Common Fund") in this case consists of the judgment in favor of the Class of $34,322,414.84, plus the additional prejudgment interest awarded by the Court pursuant to Plaintiffs' Motion for Application of Prejudgment Interest (Doc. 423), totaling $4,521,674.38, as well as post-judgment interest, which will continue to accrue until State Farm satisfies the judgment. For the reasons explained below, the motion is denied in part and granted in part.

**I.     NOTICE**

1.     On the date that Class Counsel filed the motion at issue, they posted the motion on the website that, prior to the dissemination of the litigation class notice previously approved by the Court, was created for class members. The link to the website was included in that notice. That notice also alerted class members to the possibility that "fees and expenses would be either deducted from any money obtained for the Class or paid separately by State Farm." The website

has been updated to keep class members apprised of the status of the litigation throughout these proceedings. The Court finds that, under the circumstances, publication of the notice on the website was a reasonable method of directing notice of Class Counsel's motion to the class in accordance with Rule 23(h)(1) of the Federal Rules of Civil Procedure. *See In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. C06-01793, 2008 WL 4766824, at *3 (N.D. Cal. Oct. 31, 2008) ("[T]he Court ordered the parties to post notice of class counsel's motion for fees and costs on the settlement website and directed that class members be given until October 20, 2008 to make any objections."). The notice gave class members the opportunity to object, and instructions for doing so. The Court provided class members 28 days to submit any objections. No class member has objected to the requests by Class Counsel.

## II. ATTORNEYS' FEES

2. Despite the absence of any objections, the Court has an obligation to determine if the requests are justified. Rule 23(h) permits the Court to award reasonable attorneys' fees authorized by law.

3. When a class action creates a common fund for the benefit of the class members, the Court may award class counsel reasonable attorneys' fees "equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321-NKL, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996)). "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement . . . .")

4. The judgment in this case, including the pre- and post-judgment interest, constitutes a common fund under the law. An award of attorneys' fees under the percentage-of-the-fund method therefore is appropriate.

5. In determining what percentage to award as attorneys' fees, the Court is guided by the following factors:

> (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061–62 (D. Minn. 2010)).

6. With regard to the first factor, Class Counsel achieved an excellent result for the class in a case that was hard-fought by both sides through trial and an appeal. Class Counsel obtained close to the maximum damages requested at trial.

7. With regard to the second factor, Class Counsel took this case on a contingent-fee basis, bearing a risk of recovering nothing. The only appellate case law construing similar language in an insurance provision undermined the position that Class Counsel adopted in this case.

8. As for the third factor, the case presented some difficult and novel factual and legal issues, including with respect to interpretation of the Policy and the calculation of damages. The issues were weighty enough to draw amicus briefs from various parties on appeal.

9. With respect to the fourth factor, the attorneys on both sides were skilled and experienced. Class Counsel prevailed despite being opposed by very skilled lawyers from multiple national law firms.

10. As for the fifth factor, although Class Counsel had an incentive to be efficient because this is a contingent-fee case, Class Counsel spent over 8,600 hours prosecuting the claims and defending them on appeal.

11. With respect to the sixth factor, the fact that no class member objected to the request for fees weighs in favor of granting the motion.

12. The seventh factor requires consideration of fees awarded as a percentage-of-the-recovery in similar cases. As the Court has previously noted, "[c]ourts in this Circuit and this District have frequently awarded attorney fees of 33 1/3%–36% of a common fund." *Tussey*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *4. *See, e.g., In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (finding no abuse of discretion in "$1.25 million fee award represent[ing] approximately 36% of the settlement fund); *Tussey*, 2019 WL 3859763, at *4 (approving $18,331,500 fee, equal to one-third of the common fund); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (finding $5,445,000 in attorneys' fees, representing 33% of settlement fund, to be in line with fees approved by Eighth Circuit); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving fee of $5,325,000, which was equal to 35.5% of the settlement fund); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (approving fee of one-third of $86 million recovery). Although some decisions have declined to award one-third of the recovery, the disputes in those cases were settled before trial. *See, e.g., Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949–51 (D. Minn. 2016) (awarding fees totaling 20% of settlement fund, despite counsel's request for one-third of the settlement fund, where case "did not raise overly complex legal issues," was stayed within a year while the parties participated in mediation, and "did not necessitate a large time commitment by counsel"). Here, Class Counsel litigated not only class certification,

but also summary judgment, trial, post-trial motions, and multiple attempts to appeal decisions in their favor. A higher percentage of the recovery than was permitted in cases that settled at an earlier stage therefore is not unwarranted.

13. Courts often use a lodestar calculation to cross-check that the percentage-of-the-recovery method of awarding fees produces a reasonable fee. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (noting that "use of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the fund'"); *see also Hashw*, 182 F. Supp. 3d at 950 ("This cross-check is intended to provide an approximation of a reasonable fee in order to 'alert[ ] the trial judge' if a percentage award is 'too great . . . .'" (ellipsis omitted, citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)). Here, however, Class Counsel has not provided the Court with a lodestar figure or information concerning the rates and billable hours of the attorneys who worked on this case. Class Counsel has provided only a rough estimate of the number of hours they have expended on this case: 8,600. Even without post-judgment interest, the Common Fund currently equals $38,844,089.22. One-third of that amount would be $12,948,029.74. Assuming that the number of hours purportedly expended was reasonable, Class Counsel would have to charge rates of more than $1,505.58 to produce an equivalent lodestar figure. Such a rate is approximately two to four times the rates that Class Counsel from Stueve Siegel Hanson LLP typically claims to charge or could be expected to charge. *See, e.g.,* 2019 *Missouri Lawyers Media* Billing Rates publication. In other words, the lodestar figure is two to four times less than the proposed percentage-of-recovery figure. The fact that the percentage-of-recovery figure is higher is not by itself a problem: "a multiplier is justified for a number of reasons, including the risks inherent in contingent-fee litigation, which is the typical manner in which class actions are started." *Hashw*, 182 F. Supp. 3d at 951. Other decisions have found

5

multipliers in this range to have been reasonable. *See id.* (collecting cases approving percentage-based fees that totaled between 1.47 and 6.85 of the lodestar amount). Still, given the

14. Because this case was vigorously litigated, from class certification, to summary judgment motions, to motions in limine, through trial, post-trial motions, and multiple appeal attempts, and given the considerations discussed above, the Court finds that one-third of the common fund is a reasonable fee for Class Counsel.

## III. EXPENSES

15. Class Counsel have also requested reimbursement of their expenses. It is commonly recognized that the Court can reimburse counsel from the common fund for expenses advanced on behalf of the class. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939) (recognizing a federal court's equity power to award costs from a common fund). The Court has reviewed the requested expenses and finds that they were reasonably incurred on behalf of the Class, and that Class Counsel should be reimbursed $245,658.05.[1]

## IV. SERVICE AWARD

16. Finally, Class Counsel request a service award for Mr. Vogt in the amount of $100,000.

---

[1] This amount excludes all expenses included on Plaintiffs' bills of costs (*see* Docs. 378, 428), to which State Farm did not file objections. The Clerk will enter a separate order billing State Farm for the unopposed costs, which shall be paid to Class Counsel as reimbursement of taxable expenses.

Plaintiffs also moved to shift certain costs incurred for noticing the Class, and future costs of distributing the judgment, to State Farm. Doc. 427. The Court now has denied that motion. Those costs for notice and distribution may be paid from the Common Fund (or to the extent already incurred by Class Counsel, reimbursed to them from the Common Fund).

17. State Farm did not file papers in opposition to Class Counsel's motion requesting a service award, but in opposing Plaintiffs' separate motion to shift the costs of providing notice to the class, State Farm directed the Court to a recent decision from the Eleventh Circuit holding that service awards are impermissible. *See* Doc. 434 at 4 (citing *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312, at *7-9 (11th Cir. Sept. 17, 2020)). State Farm has no standing to oppose the requested award because the award is being paid from the Common Fund, in which State Farm has no interest. Nonetheless, the Court has an obligation to review the propriety of the requested award to protect the interests of the Class.

18. In *Johnson*, the Eleventh Circuit recently held that two Supreme Court decisions issued in the 1880s, *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) "prohibit the type of incentive award . . . that compensates a class representative for his time and rewards him for bringing a lawsuit." *Johnson*, 975 F.3d at 1260. *Johnson* expresses concern that "incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain," *id.*at 1258 (quotation marks and citation omitted). However, the Court sees no indication that expectation of an incentive award led Mr. Vogt in this case to compromise the interest of the class for his personal gain. To the contrary, Class Counsel states that, "Mr. Vogt at no time considered settling the case individually, even when it would have been in his own self-interest to do so; instead, at all times he put the interests of the Class ahead of his own." Doc. 426, p. 20.

19. Moreover, the Eighth Circuit has expressly recognized the value of incentive awards. *See Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) ("Incentive awards compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class."). The

7

Eighth Circuit has repeatedly affirmed service awards to class representatives. *See In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming $2,000 award to five representatives); *Tussey*, 850 F.3d at 961–62 (approving $25,000 incentive awards); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (finding no error in service award of $10,000). Given this precedent, which, unlike *Johnson*, is binding on the Court, and in the absence of a contrary directive from the Eighth Circuit or the Supreme Court, the Court declines to find service awards in general impermissible. *See Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546, 2020 WL 6146875, at *9 (D.N.J. Oct. 20, 2020) (declining to following *Johnson*, stating that, "[u]ntil and unless the Supreme Court or Third Circuit bars incentive awards or payments to class plaintiffs, they will be approved by this Court if appropriate under the circumstances").

20. The Court turns next to the question of whether a service award is appropriate in this case, and the amount of the award. The Court must consider the following factors to "decid[e] whether the service awards were warranted: (1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri*, 855 F.3d 860, 867 (8th Cir. 2017).

21. In this case, the class has benefited greatly from Mr. Vogt's participation in this case. Mr. Vogt did not settle his claims to his own benefit, but prosecuted his case from inception through trial and then through appeal, including through an attempt to have the case reheard by the Eighth Circuit *en banc*. In the process, Mr. Vogt responded to written discovery, sat for a deposition, and testified at trial. Despite suffering a detached retina 36 hours before he testified at trial, he was present for each day of trial to represent the Class before the jury.

22.     Still, this case was not the kind of fact-intensive case in which large service awards might be justified. *Cf. Browne v. P.A.M. Transp., Inc.*, No. 5:16-CV-5366, 2020 WL 4430991, at *3 (W.D. Ark. July 31, 2020) (rejecting request for $50,000 service award in favor of $40,000 service awards for the named plaintiffs who each spent 400 hours helping counsel litigate the case, finding that "approximately $100 per hour" was "appropriate compensation" and any more "would constitute a windfall"); *Tussey*, 2019 WL 3859763, at **5–6 (awarding $25,000 incentive awards to named plaintiffs who were "actively involved" in the landmark litigation, which included a month-long trial and spanned 12 years); *see Galloway v. Kansas City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2015 WL 13297964, at *6 (W.D. Mo. Feb. 20, 2015), *aff'd*, 833 F.3d 969 (8th Cir. 2016) (declining to award $3,000 to plaintiff who had sat for deposition and consulted with class counsel because he "ha[d] not done a great deal in th[e] case," and instead awarding just $1,000). In this case, the Court granted summary judgment to the Class on threshold legal issues, and the trial centered on data and experts' damages calculations—issues that did not warrant or require any involved testimony from Mr. Vogt.

23.     Because, despite its having been tried and appealed, and despite the magnitude of the damages award, Mr. Vogt's involvement in this case was not extensive, the Court finds that a service award in excess of $15,000 for Mr. Vogt would represent a windfall.

## **CONCLUSION**

For the foregoing reasons, the Court grants Class Counsel's motion for a fee award of one-third of the Common Fund ($34,322,414.84, plus $4,521,674.38 in prejudgment interest, plus post-judgment interest, which continues to accrue) and reimbursement of their expenses, which total $245,658.05. The motion for a service award for Mr. Vogt is granted in part; Mr. Vogt is awarded $15,000 from the Common Fund.

**IT IS SO ORDERED.**

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 25, 2021
      Jefferson City, Missouri